# Wytheville

CITY OF LYNCHBURG V. E. L. SMITH, ET ALS.

June 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Eggleston, JJ.

The opinion states the case.

*T. G. Hobbs,* for the appellant.

*Wm. Kinckle Allen,* for the appellees.

BROWNING, J., delivered the opinion of the court.

The opinion by the Honorable Edward Meeks, judge of the Circuit Court of Amherst county, is justified by the record and sufficiently supports the decree complained of, which, therefore, will be affirmed.

"This suit was brough by the City of Lynchburg against E. L. Smith, et als., to secure an injunction and establish certain alleged rights under easements by grants pertaining to rights-of-way in connection with its water system, in, over and across the county of Amherst.

"In the years 1904 to 1906, the city of Lynchburg, acting under and because of its municipal powers created by statute and charter, extended and enlarged its municipal water supply system by purchasing a large boundary of land, or watershed, in the county of Amherst, on the headwaters of Pedlar river, erecting a large impounding dam thereon (from which water was conducted to its corporation by a pipe line extending over and across Amherst county and into the city of Lynchburg, crossing, among others, the properties of the defendants, or their predecessors in title), together with telephone convenience and all necessary incidents thereto. The water pipe line, or conduit, was for the most part of redwood staves,

save and except where it crossed water courses or depressions producing such stress and strain as to necessitate the use of cast iron pipes. The rights-of-way for said pipe line were secured from the then present landowners, and embodied in easements by grants, which were duly executed and recorded in the clerk's office of the circuit court of said county. The said pipe line, which was made of redwood staves, gave way by decay, which demanded replacement. Necessary replacement of defective pipes was made when demanded, but finally the situation became so serious that it was perfectly apparent that economy and good judgment demanded that the entire line be replaced, or supplanted by cast iron pipes. The original wood pipe lines, which were laid on the easements acquired as aforesaid, had a diameter clearance of thirty inches, aside from the actual thickness of the pipe or staves themselves.

"When the necessity for replacement of the old original pipe line became apparent and it was undertaken several months ago, the city proceeded to make an entrenchment for the new line under its original easement, along by, parallel to and about three feet from the original line. The construction of the new line in such manner would take up a strip of land approximately six feet, measured from the center of the new pipe line, which would really mean taking approximately six additional feet of land for the right-of-way line, outside of the edge of the old pipe. In furtherance of this work and undertaking, the city secured its pipe and began to deliver it along the right-of-way of the old pipe line, to be laid in and constructed as above indicated, with the intention that after the new line had been completed and connected, and the water turned therein, then the old pipe line would be left in its position in the ground and abandoned.

"Soon after the city began its work, the defendant landowners protested against such procedure and opposed the delivery of the cast iron pipe for replacement in the manner aforesaid, on the ground that the city had no right

under its easements by grants to take property other than that which was occupied by the original pipe line.

"On account of this interference on the part of the landowners and the consequent damage and detriment to the city produced thereby, the city brought this suit and secured a temporary injunction, inhibiting, enjoining and restraining in general terms the landowners, or their representatives, from preventing the city in delivering its pipe and constructing its line as it was about to do. The injunction was granted under bond of $10,000, and the property owners, defendants to this proceeding, are demurring to the cause of action.

"The city contends on the one hand that under and because of its easements created by grant, all of which are exhibited with the bill, that it is entitled to lay, maintain, operate and construct the additional cast iron pipe line as it is doing, and as set out above, without further compensation or remuneration by way of land damages to the landowners. On the other hand, the landowners contend that the city is restricted under its said easements to the original pipe line, or conduit, and telephone line, and therefore, has no right, power, privilege or authority to enter upon their premises and construct, maintain and operate said cast iron pipe line, without first securing title to the property sought and making with them just satisfaction, by way of compensation and remuneration.

"Therefore, the sole question here, briefly stated, is whether or not the city, under the terms of its easements, by grant, as contemplated by the parties, under all the facts and circumstances, can increase the servitude on the lands of the defendants by laying the new cast iron pipe line; or, under the terms of the easements, is the cast iron pipe line beyond or outside of their terms, or wholly within them as contemplated by the parties?

"The city, in the first ten pages of its Note and Authorities, refers to the facts of the case as hereinbefore outlined, and devotes considerable attention to whether or not the city has a right to enter the lands of the de-

fendants for the purpose of replacing, repairing and maintaining the original pipe line. The express terms of the easements, as well as necessities arising by implication of law, would seem clearly to give the city the right to enter for the repair and replacement of its original pipe line; authorities seem to be in unison as to this proposition, * * *.

"Much is said as to whether or not the city has lost any of its rights by non-user, assuming that they had them to lose in the first instance. The law and facts applicable to the principles of non-user do not appear to apply to this case. The real test, as judged by the admitted facts and circumstances, as well as the construction and interpretation placed upon the easements by practicable operation, justifies one in concluding that there were no rights to which non-user could apply.

"Therefore, for the sake of argument, eliminating by concession the right of the city to enter for the purpose of repairing and replacement of the original pipe line, and eliminating any question of existence of rights by non-user, we are brought to the real heart of the matter to be determined here—whether the additional or new cast iron pipe line proposed to be laid as aforesaid, is an increase in servitude on the lands of the defendants, and beyond the terms of the easements.

"The city cites numerous authorities which, it contends, uphold its acts as contended for in this case but an analysis of them would seem to show that they fall short of the mark.

"Corpus Juris, 19, page 974, expressly states:

" 'Where an easement exists by express grant its use must be confined to the terms and purposes of the grant, but may of course be used in accordance therewith,' * * *.

"In the case of *McKell* v. *Collins Colliery Co.,* 46 W. Va. 625, 33 S. E. 765, 768, it is stated:

" 'When one has an easement in another's land, he must be allowed to enjoy it in such a manner as will secure to

him all the advantages contemplated by the grant, but he must so use his own privileges as not to do any unnecessary injury to the grantee.'

"Minor on Real Property (2d Ed.), vol. 1, page 128, asserts:

" 'Where an easement is thus expressly cited its use and enjoyment must be confined to the terms and purpose of the grant, or reservation creating it,' etc.

"And so it follows, of course, that a grantee always has a right, as shown by the authorities cited, to use all of the rights, powers and privileges covered by the terms of his easement.

"Jones on Easement, at page 637, shows that where a party was given the right to cut a canal one and one-quarter rods in width and used it with a narrower width for a considerable period, this did not prevent him later from widening the canal to bring it within the terms of the grant.

"In the case of *Hammond* v. *Hammond,* 258 Pa. 51, 101 A. 855, L. R. A. 1918A, 590, where an easement was granted for a bridge twenty feet in width but the grantee for years preferred to use a ford, the grantee was not prevented from exercising his right by building the twenty-foot bridge.

"In the case of *Haldiman* v. *Overton,* 95 Vt. 478, 115 A. 699, where a party had the right to use the water from a spring but simply preferred not to do so for some time, the party was not prevented later from fully exercising the terms of his lease and utilizing the water for the benefit of his dwelling and curtilage, provided such use fell within the terms of his grant.

"The plaintiff cites the case of *Tong* v. *Feldman,* 152 Md. 398, 136 A. 822, 51 A. L. R. 1291, wherein it appears that certain gas equipment was permitted to be increased, and relies greatly upon this case in support of its contention. It does not appear that the increase of the gas in this case was not justified by the terms of the lease, but rather fully brought within its terms. But even this case,

if what it stands for is true, seems to be contrary to the overwhelming weight of authorities, and contrary to virtually every case and authority cited by the city.

"In the case of *C. F. Lott Land Co.* v. *Hegan,* 177 Cal. 169, 169 P. 1035, where a grantee was permitted to increase the power of his easement by raising the original use from a smaller amount to 2,500 inches of water under four-inch pressure, this permission was fully justified by the terms of the easement, irrespective of the fact that the grantee had not seen fit in the beginning to use all that his easement allowed.

"In the case of *Buckles, Irvine Coal Co.* v. *Kennedy Coal Corporation,* 134 Va. 1, 114 S. E. 233, it appears that an easement was granted for a standard gauge railroad, and the grantee in the beginning only availed itself of a narrow gauge railroad, but later established the standard gauge railroad under the terms of its easement. Certainly here, as in the other cases, the right exercised was plainly within the terms of the lease.

"The overwhelming weight of authorities, based upon law, reason and common sense, seems to be to the effect that where rights and privileges are created under the terms of an easement, which lies in grant, everything that the easement permits can be done—all things expressly permitted, or incidentally allowed by implication—for the full and complete enjoyment of the easement is correct and proper, but when you once get beyond these limitations you get into a realm of increased servitude, which jeopardizes property rights and cannot be allowed. This is fully borne out by the authorities cited by the defendant, and especially the cases of *Allen* v. *San Jose Land & Water Co.,* 92 Cal. 138, 28 P. 215, 15 L. R. A. 93; and *Winslow* v. *City of Vallejo,* 148 Cal. 723, 84 P. 191, 5 L. R. A. (N. S.) 851, 113 Am. St. Rep. 349. The latter case would seem to be 'on all fours' with the facts of the case here, and is so much in point that it is especially and particularly referred to, to be quoted and read in full in connection with the conclusion here reached. Its citations are

fully borne out by the weight of authorities and fully in keeping with the best reasoning possible to adopt to protect all rights to which the grantee may be entitled under the terms of his easement, and at the same time protect the property owner against any unwarranted and unjust use of his property.

"The city contends that the language used in the easements of the defendants, property owners, justifies and fully warrants it to lay the new cast iron pipe line in the matter aforesaid, without any further compensation to the landowners.

"There is some difference in the rights given the city under the easements in question, but with slight deviation the language adopted is about as follows:

" '* * * the right to lay, construct, operate, inspect, repair and perpetually maintain water or conduit lines with all the necessary fixtures and appurtenances through and over the property of the said parties of the first part hereinafter described along the route surveyed, or hereafter to be surveyed by the same and adopted by the engineer of the city of Lynchburg; reference being made for a more accurate description of the said land to the plot of survey, which will hereafter be made and recorded in the clerk's office of the Circuit Court of Amherst county.'

"It is contended that because the rights of the city are referred to in the plural (lines), it has the right to place as many lines as it chooses and as may be necessary, in its judgment, in the lands of the property owner, although no survey has ever been made as called for by the easement, showing the route, and although for approximately thirty years no other construction or interpretation has been placed upon the easement other than to construct one water main. Then, too, it is easy to see, in view of what the city has done, that the plural was used indiscriminately to refer to the water line or conduit line, and in some instances to the water conduit and telephone line, for it has never constructed but one line, and each and every one of the easements, virtually without exception,

when specifying the depth of earth, states that the line shall be covered with reference to it in the singular, rather than in the plural. Therefore, if the contention of the city, as now made, should be permitted to prevail, it would override the construction and interpretation which it has placed on the easements by operation and user for thirty years, and permit it, if followed to its logical conclusion, not only to lay, construct and maintain the new cast iron pipe line, but also (if circumstances and demands might make it necessary in its judgment), to lay other numerous pipe lines in the future, larger or smaller, as it might see fit and proper. The new cast iron pipe line is shown to take up six feet additional land of the landowners; it is shown and admitted to be six inches larger than the old pipe line; and it is granted and conceded that the old pipe line (which is now very much in decay, making it necessary to supplant it or replace it with the new pipe line), will be left in the ground for further decay, making fall-ins, or cave-ins in the property of the landowners, thereby necessarily resulting in further damage, injury and detriment to the grantors.

The terms of the easement, to say the least, are indefinite, and the city having adopted and interpreted them for the long period of time, to-wit: thirty years, is bound by them. The city has established its water main and located its route and therefore has no right under its easements, to run to the right or to the left of the original pipe line, although the one or the other might cause a great difference in damages. If the city, under the terms of its easement, can lay this additional new cast iron pipe line at this time, it could lay another next year, or twenty years hence, *ad infinitum,* and thus break up and destroy the uses of the landowners' property for a consideration, which, as shown by the easements are *de minimis,* and although under the easement and in accordance with the law, they are only permitted to use the property without owning it as fee simple owners.

"An analysis of practically all of the authorities cited

by the city in its brief refutes its contention. The authorities cited by it universally permit additional servitude under the terms of its easement, which nevertheless, falls within the terms of the easement where its full limitations were not used in the beginning.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"All of these authorities show that the grantee may always do what his easement permits him to do, but when he gets beyond the terms of his easement, then he is going over the limitation of his rights, and the overwhelming weight of authorities is that he cannot do so.

"The *Winslow-Vallejo Case, supra,* is in accord with the great weight of authority and seems to me to be in full accord with right, reason and justice.

"Therefore, the demurrer in this case will be sustained. It is not necessary, it would seem, to undertake further trouble, delay and expense by the taking of evidence and lengthy testimony to undertake to explain that which has already been explained, and which seems so clear and plain in establishing the rights of the party.

"The injunction will, therefore, be dissolved, and the suit or bill dismissed at the cost of the plaintiff."

*Affirmed.*