STATE OF WEST VIRGINIA *v.* THEODORE HORNER, *et al.*

(CC 599)

Submitted February 1, 1939. Decided February 21, 1939.

*Clarence W. Meadows,* Attorney General, *Forrest B. Poling,* Assistant Attorney General, and *James H. Brewster, Jr.,* for plaintiff.

*Waugh & Waugh,* for defendants.

Fox, PRESIDENT:

Theodore Horner and Belle Horner are the owners of a tract of land in Lewis County, through which federal highway route 19 passes, said highway being located on a right of way forty feet in width, heretofore acquired by public authorities for that purpose, and on which right of way is the paved highway eighteen feet in width. The State Road Commission proposes to acquire two additional strips of twenty feet in width on the east side of said highway, located at different points thereon, and on November 4, 1937, filed its original petition describing the lands proposed to be taken, one tract containing .22 of an acre, more or less, and the other, .4 of an acre, more or less, and alleging, in effect, that it had designated that portion of the said highway in Lewis County as project No. 156-B, and is "constructing, straightening, grading, widening and otherwise improving said road"; that, for that purpose, it was necessary to "pass over, through and upon" the lands proposed to be taken; that it had filed with the clerk of the county court of Lewis County plats or maps showing the land to be acquired; and that it had been unable to agree with the owners of the land as to the amount of compensation which should be paid therefor. Later, the road commission filed its amended petition, in which it was alleged that the proposed improvement was a part of what was formerly termed a "beautification project" and later, "roadside improvement project", sponsored by the Federal Government, and that the real purpose of such roadside improvement was to reduce the angle of slopes, and cover the same with vines, trailing plants and small trees which would materially reduce the cost of future maintenance, necessitated by the erosive forces of nature upon bare cuts and fills. It was further alleged that the maintenance of route 19 in that section

was expensive, and that the completion of the proposed project for which the additional land was sought would materially reduce the maintenance costs. The other allegations in the amended petition are not materially different from those contained in the original petition. Separate demurrers were interposed by the defendants to each of the said petitions and both were overruled, and the legal questions arising thereon were, by the circuit court of Lewis County on its own motion, certified to this court for decision.

The demurrer to the original petition is based upon the proposition (1) that the State Road Commission is not authorized by law to condemn lands for public use; (2) that the said commission is not authorized to designate a road as a state road in order to construct, straighten, grade, widen or otherwise to improve such road; (3) that the said commission is not authorized to file with the clerk of the county court the plat or map required by law to be so filed; and (4) that the State Road Commission is not authorized to institute a proceeding to acquire lands necessary for roads and road maintenance. The demurrer to the amended petition, in effect, raises the same questions and, in addition: that (1) the amended petition, as well as the original petition, fails to allege that the petitioner desires to acquire the land for the purpose of constructing, widening, straightening, grading or altering a state road, but, on the contrary, that the land is sought for other purposes, termed in the demurrer as "a slope planting project"; and (2) that it appears from the petition that the land sought to be taken is not for the purpose of a road as defined by statute.

Considering first the question of what is meant by a road, we do not go further than to refer to Code, 17-1-3, which defines the words or terms "road", "public road", or "highway" to "include the right of way, roadbed and all necessary culverts, sluices, drains, ditches, waterways, embankments, slopes, retaining walls, bridges, tunnels and viaducts necessary for the maintenance of travel, dispatch of freight and communication between individuals

and communities." We think, therefore, that when the petitioner stated its intention to acquire land for the purpose of constructing, straightening, grading, widening, and otherwise improving a road, the allegations should be construed to include not only the road proper but the ditches and slopes bordering thereon.

The demurrer to both the original and amended petitions raises the question as to whether or not this proceeding can be maintained by the State Road Commission, a corporation. It must be admitted that there is some confusion in the statute on this point. The State Road Commission, which consists of the State Road Commissioner and four other appointees of the governor, is, under the express terms of the statute, an advisory body, but has certain powers which are specifically defined. Acts Ex. Sess. 1933, Ch. 40, Art. II, Sec. 11; Michie Code, 1937, 17-2-11. The State Road Commissioner is granted wide powers in connection with the discharge of his duties, some of which, under Acts Ex. Sess. 1933, Ch. 40, Art. II-A, Sec. 9; Michie Code, 1937, 17-2a-9, come under the head of "sole authority" to do certain things therein particularly enumerated, one of which is "to acquire land necessary for roads and road maintenance." He is also granted under Acts 1937, Ch. 78, Art. 4, Sec. 4; Michie Code, 1937, 17-4-4, certain powers in connection with the adjustment of damages occasioned by the construction, reconstruction or repair of any state road, to provide for the acquisition of land necessary for cuts and fills, and to lease or purchase lands for certain purposes, "including necessary rights-of-way for the construction of public roads." The power of the State Road Commissioner to do everything necessary for the acquisition of lands for the construction, widening or improvement of a state highway, primary or secondary, is conferred by the statute in express terms, and as to his authority in that connection there can be no question. But we find another section of the statute, Acts 1st Ex. Sess. 1936, Ch. 13; Michie Code, 1937, 17-4-5, enacted at the same time the powers were conferred upon the State Road Commissioner, under

which eminent domain proceedings may be instituted and prosecuted either by the State Road Commissioner or the State Road Commission. This is a plain and unambiguous provision, conferring a power upon two separate and distinct agencies of the state, which power may be exercised by either, independently of the other, and is of such a nature as needs no interpretation. The language employed speaks for itself. We cannot say that the language of this section conflicts with any other provision of the road law, for the reason that it may well be said that, while sole power and authority is, in some instances, given to the road commissioner, the right to invoke eminent domain is not in that exclusive category, and that such sole and exclusive authority is limited to the cases enumerated, wherein methods other than eminent domain are invoked. We hold, therefore, that the proceeding was properly instituted in the name of the State of West Virginia, by the State Road Commission, and this necessarily requires the further holding that the designation of a project and the filing of maps and plats in the office of the clerk of the county court by the road commission, being merely preliminary to the institution of the condemnation proceeding, does not affect the right of the road commission to institute and prosecute the pending proceeding.

The remaining question is whether or not the allegations of the petitions are, upon their face, sufficient to justify the taking of private property for road purposes. We have already adverted to the statute which defines the meaning of the word "road" and have held that it includes ditches and slopes. The original petition alleges that the strips of land proposed to be taken are for the purposes of constructing, straightening, grading, widening and otherwise improving the road at that point, and that in order to carry on said work, it was necessary to "pass over, through and upon" the land proposed to be taken. The amended petition enlarges somewhat on the purposes for which the strips of land are to be taken, and alleges that in connection with the taking is a program

of roadside improvement, covering the reduction of the angle of the slopes, and that the planting of vines and shrubbery thereon is contemplated; but it is expressly alleged that "the real purpose of said roadside improvement projects is to reduce the angle of slopes, and cover the slopes with vines, trailing plants, and small trees, which very materially reduces future maintenance caused by the erosive forces of nature, upon the bare cuts and fills", and then follows the further allegation that the maintenance of route 19 in that section is expensive, and that the completion of the proposed project will materially reduce maintenance costs.

We do not say that the acquisition of land, by condemnation, to be used solely in the beautification of the roadside is warranted under our statute; but if the land sought to be taken is necessary or useful in the more practical matter of sloping the cuts and fills so as to guard against erosion and other natural forces, to the end that the highways may be made safer, and the cost of maintenance lessened, the planting of shrubs and vines which tend to beautify the slopes and fills, as well as prevent erosion, becomes a secondary, if not immaterial, matter, and need not be considered in determining the main issue.

Although the allegations of the original and amended petitions are not as specific as to the necessity for, and the use to which the land sought is to be devoted, as they should be in a proceeding of this character, we think they sufficiently allege facts which, *prima facie,* show the right of the State to acquire the land proposed to be taken. "While it is ordinarily within the discretion of the agency exercising the power of eminent domain to determine the quantity of land necessary for a public use, what is such public use as will justify the exercise of the power in the particular case is usually a judicial question depending upon the facts." *Shelton* v. *State Road Commission,* 113 W. Va. 191, 167 S. E. 444; *B. & O. Rr. Co.* v. *Pittsburgh, Wheeling and Kentucky Rr. Company,* 17 W. Va. 812; *City of Huntington* v. *Frederick Holding Company,* 85 W.

Va. 241, 101 S. E. 461. The overruling of the demurrers to the petitions does not preclude consideration of the judicial question of whether or not, on the facts which may be developed, the right to take the defendants' property exists.

The right of eminent domain, being an attribute of sovereignty, may be vested, by legislative action, in the various subdivisions of the state, as well as in private ventures where they are to be devoted to uses in which the public has the right to share. Having in mind the paramount duty to safeguard the rights of individuals and others in the ownership and use of their property, the power of the state or its subdivisions should not be arbitrarily or capriciously invoked. On the other hand, the agencies of the state, legislative and administrative, are clothed with a wide discretion in determining the purposes for which the right may be invoked, and the amount of property needful and reasonably necessary for a particular project. Engineering problems, and decisions as to the amount of land necessary to provide rights of way for roads, including the slopes and fills thereof, necessary for the safety of traffic, or to provide against excessive costs of maintenance, are peculiarly matters of discretion, vested in administrative officials, and in the absence of a showing that such discretion has been arbitrarily or capriciously exercised, will not be interfered with by the courts.

The rulings of the circuit court are affirmed.

*Affirmed.*