# Richmond

## VIRGINIA ELECTRIC AND POWER COMPANY v. MARTIN T. WEBB AND BESSIE ALLEN SMITH.

November 22, 1954.

Record No. 4274.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Hunton, Williams, Gay, Moore & Powell; Ralph H. Ferrell, Jr.* and *Joseph A. Howell, Jr.*, for the appellant.

*Rust & Rust* and *Webb, Wood & Bauknight,* for the appellees.

MILLER, J., delivered the opinion of the court.

The Virginia Electric and Power Company, a public service corporation, hereinafter called petitioner, sought to condemn easements over two tracts of land in Fairfax county, Virginia. Both tracts, Parcel 7 or "A", containing 144.98 acres, owned by Martin T. Webb, and Parcel 32, containing 72.70 acres, owned by Bessie Allen Smith, appear upon the accompanying plat.

**FRED A. & CATHERINE'S MOSS**

**MARTIN T. WEBB**

⑦

"A"

"B"

*2336.8'*

TRANSMISSION LINE RIGHT OF WAY

**MARY S. JACOBS**

R.E. HAMPTON ROAD

TRACT "A" — 144.98 ACRE TRACT DESCRIBED
IN ORIGINAL PETITION
TRACT "B" — 57.92 ACRE TRACT ADDED TO
PETITION BY LOWER COURT

TRACT A.
North of Proposed Right of Way _____ 27.18 Acres
South of Proposed Right of Way _____ 163.63 Acres
Proposed Right of Way _____ 12.09 Acres
Total Acres _____ 202.90 Acres

SCALE

PLAT
PARCEL NO. 7          MARTIN T. WEBB
Fairfax County, Lee District

**FORMERLY
CLINT AMBLER**

IRON PIPE BY CEDAR
FENCE POST

**GEORGE LEES HEIRS**

10"WHITE
OAK

DRY BED
CREEK

ST. H'W'Y
RT. No. 612

TRANSMISSION LINE RIGHT OF WAY

*2387'*

PIPE

PIPE &
STONE

**BESSIE ALLEN SMITH**

㉜

R.E. ST. H'W'Y RT. NO. 646

**GEORGE ROBEY**

PIPE

IRON BOLT IN ROAD

SCALE

South of Proposed Right of Way ...... 51.69 Acres
North of Proposed Right of Way ....... 14.70 Acres
Proposed Right of Way ..... ... 4.31 Acres
Total Acres ...... 72.70 Acres

PLAT
PARCEL NO. 32          BESSIE ALLEN SMITH
Fairfax County, Centreville District

The condemnation commissioners viewed the properties on February 17, 1953, and after hearing evidence as to the value of the interests taken in the lands and damages to the residue, made their awards. In their report filed February 19, 1953, Martin T. Webb was allowed $4,367.04 compensation for the property taken and $2,400 damages to the residue, a total of $6,767.04. Bessie Allen Smith was awarded $1,304.50 compensation and $3,975 damages, a total of $5,279.50. Petitioner's exceptions to the report were overruled, and from the order confirming the awards we granted an appeal.

In Virginia a public service company, enjoying the power of eminent domain, has a right to condemn land or any interest or estate therein for its uses, but in its petition it is required to set out the interest intended to be taken and state specifically the uses and purposes for which the land or the interest or estate therein sought to be acquired is wanted. Section 25-8, Code of 1950. It is also required to file with its petition a plat showing the parcels of land sought to be condemned or in which an interest or estate is sought to be acquired and those that are "likely to be damaged." Section 25-9, Code of 1950.

Petitioner undertook to condemn an easement 225 feet wide and 2336.8 feet long through Parcel A, and an easement 100 feet wide and 2387 feet long across Parcel 32, on which to erect poles, towers, wires and necessary equipment to maintain and operate an electric transmission line. It also sought to acquire an unlocated easement or general right of ingress and egress over Parcels A and 32 to and from the transmission line easements for use in the construction of the line or in event it became necessary to repair or service the line. No easements or rights of ingress and egress were sought over Parcel B, also owned by Martin T. Webb, and that tract of 57.92 acres was not described in the petitions nor did it originally appear upon the accompanying plats.

In the petitions the unlocated easement or rights of ingress and egress sought to be acquired are described thus:

"* * * For the purposes of the construction, maintenance and operation of its said rights of way and works the Company shall have the right of ingress to and egress from such rights of way over such roads as may now or hereafter exist on the property of Owners, and *if there are no roads reasonably convenient to said rights of way the Company, its agents and employees shall have such right of ingress and egress over the property of Owners as may be reasonably convenient to and from said rights of way, in order to construct and efficiently maintain said towers, pole lines and appurtenances.* The right, however, is reserved to the Owners and each of them, to shift, relocate or close and abandon any and all such roads at any time. Any damage resulting to such roads from such use thereof by Company shall be repaired by Company at its own cost and expense."

Both landowners resisted acquisition of these unlocated easements over their lands. In their answers they asserted that there was no necessity for petitioner to acquire unlocated rights of ingress and egress to construct and operate its transmission line and charged that its attempt to acquire easements or rights of this character was an unreasonable and arbitrary exercise of its discretion and power of eminent domain. They insisted that existing roads afforded reasonable means of access to and from the transmission line easements, and that if other roads and ways of access were needed, then petitioner should specify the area needed and locate on the land the rights of way to be acquired.

An issue of fact was thus presented and after hearing testimony and examining the plats in evidence, the court sustained the landowners' contention and struck from the petition the italicized portion of the above quoted paragraph. That action of the court denied petitioner the right to acquire the unlocated easements or rights of ingress and egress over the two parcels of land.

Martin T. Webb also moved the court to require petitioner to incorporate and describe in its petition the tract of land of 57.92 acres designated as Parcel "B". Over petitioner's

objection the court required it to amend its petition and incorporate therein a description of Parcel B.

The landowners offered no testimony to show that acquisition of the unlocated easements of ingress and egress was unnecessary or an arbitrary exercise of the power of eminent domain. They relied primarily upon the plats filed in evidence to prove that the transmission line easements across the two tracts of land were accessible from the existing roads shown on the plats by trucks or other equipment used in the erection and maintenance of the transmission line. It was pointed out that the southern side of Parcel A was bounded by Hampton Road and that another but unused road, designated on the plat as "Old Road" extended therefrom to and across the transmission line.

The owner of Parcel 32 called attention to the fact that state route 646 bounds that tract on its eastern end and route 612 crosses it near its western extremity. She insisted that the transmission line traversing that tract was accessible to and could be serviced from these highways.

John G. Shaw, a licensed and experienced engineer employed by petitioner, testified as follows: He said that he helped design, plan and construct the transmission line in question, that in planning and constructing lines of this character, consideration is given to the fact that they must be serviced and maintained. Rights of ingress and egress to the lines are acquired so as "to provide for emergency repairs to the line and to keep the right of way clear after the initial cutting."

In further explanation of why unlocated rights of ingress and egress are needed, he said:

"In regard to emergency repairs the line is designed against the usual hazards that might reasonably be encountered such as winds of maximum velocity, high storms of expected or usual severity and lightning, but there are a number of hazards that cannot be designed against and they are among other things tornadoes, winds of such intensity that trees or other debris might be carried through the air

and into the line, airplanes flying into the lines, as has happened, and forest fires of unusual severity.

*　　*　　*　　*　　*　　*　　*

"I was about to say if any of those things should cause an outage to the line it is not only necessary to make repairs, it is necessary to make those repairs quickly in order to restore service in this case to a large number of users. In getting your equipment to the line it is sometimes necessary and convenient, and by equipment I mean trucks and repair vehicles, * * * to use whatever roads are available, whether they are private or public and to use land outside of the right of way in order to get your equipment on the right of way quickly. Once you are on the right of way there are very often obstructions of terrain such as steep banks, gullies, streams that would be troublesome and too low to get your equipment across, and where you had the right just to move a short distance off the right of way you can very often get around and save the time and expense of building bridges or rigging winch lines or whatever it took to move your equipment up and down steep grades, and for that reason we have felt that these rights which have been set forth in the petition were necessary."

When questioned as to the character of accessibility afforded to the right of way on Parcel A over Hampton Road and thence along Old Road, he pointed out that though Hampton Road was in good condition it did not intersect the easement on Parcel A. Part of the area between that road and the transmission line was tillable land, part wooded, and a stream interfered with passage over some of the area. He said that Old Road appeared to have been abandoned years ago, trees had grown up on it, and it was impassable. In short, there were no public roads affording access to the 2336.8-foot right of way on Parcel A.

Upon being asked if sufficient means of ingress and egress was not afforded directly to the 100-foot right of way on Parcel 32 by state routes 646 and 612, he said that where highway No. 646 crossed that right of way the road was in

a cut varying in depth from two to five feet, rendering it difficult and impractical to drive a truck from the road onto the transmission line right of way. He also stated that in his opinion any improvement of route 646 would result in deepening the cut. In testifying as to the accessibility afforded by route 612 to the 100-foot wide easement, he explained that route 612 was in a cut about six feet deep where it crossed the transmission line easement and that it was more difficult to move a truck from that road directly onto the right of way than it was from route 646.

The right of general access to and over each tract of land sought to be acquired as incidental and necessary to the utilization and enjoyment of the easement upon which the transmission line is erected is an interest in land. It is sometimes designated as a subordinate or secondary easement.

"The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a 'secondary easement,' a mere incident of the easement that passes by express or implied grant, or is acquired by prescription. The owner of the dominant tenement may enter on the servient tenement, and there do anything necessary for the proper use of the easement. This secondary easement can be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement. * * *" 2 Thompson, *Real Property* (Perm. Ed.), § 676, p. 343.

In *City of Lynchburg* v. *Smith*, 166 Va. 364, 367, 186 S. E. 51, the question was whether or not the city had a right to enter defendants' lands to repair and maintain its original pipe line. In deciding the question the court said:

"* * * The express terms of the easements, as well as necessities arising by implication of law, would seem clearly to give the city the right to enter for the repair and replacement of its original pipe line; authorities seem to be in unison as to this proposition. * * *" 3 Tiffany, *Real Property* (3d ed.), § 803, pp. 322, 323.

"Nor is there any merit in appellants' contention that the

appellee had no right to condemn a right of ingress and egress over appellants' land from the public highway to the transmission line right of way, even assuming that this question had been properly presented by way of a specific objection. The right of way for a transmission line includes the right to maintain and service the line. *Aycock* v. *Houston Light & Power Co.*, 1943, Tex. Civ. App., 175 S. W. (2d) 710. Appellants' lands were entirely surrounded by lands of other parties except where state road No. 44 ran along a part of the south boundary. By operation of law the appellee would have a right of way of necessity from the transmission line over appellants' land to the public highway in order to repair and maintain the line. * * * " *Moore* v. *Indiana and Michigan Electric Co.*, 229 Ind. 309, 314, 95 N. E. (2d) 210, 212.

By these authorities it is made abundantly clear that an unlocated or secondary easement of ingress and egress over land is subject to acquisition by condemnation.

■ We now determine whether or not petitioner's attempt to acquire this general right of ingress and egress for the purpose of erection, maintenance and repair of its transmission line is an arbitrary and capricious exercise of its power of eminent domain.

"The grantee of the power of eminent domain may ordinarily exercise a large discretion not only in respect of the particular property, but also as to the amount of land to be taken for the public purpose. This discretion is not reviewable by the courts, unless, possibly, where there has been a gross abuse or manifest fraud. * * * " 18 Am. Jur., Eminent Domain, § 109, p. 736. *Bragg* v. *Weaver*, 251 U. S. 57, 40 S. Ct. 62, 64 L. ed. 135.

"It is competent for the courts to supervise the exercise of the power delegated, but they cannot invade the bounds set by the Legislature; and will not undertake to control the discretion of the companies in taking property for their own use, unless there has been a very clear abuse of power. * * * " *Zircle* v. *Southern Ry. Co.*, 102 Va. 17, 20, 45

S. E. 802. *State* v. *Horner*, 121 W. Va. 75, 1 S. E. (2d) 486.

"Unless the discretion of the condemning agency as to reasonable necessity is wrongfully, arbitrarily, or oppressively exercised, that discretion cannot be controlled or reviewed by the court. * * * " *Johnson* v. *Consolidated Gas, Electric Light & Power Co.*, 187 Md. 454, 463, 50 A. (2d) 918.

" * * * Action is not arbitrary or capricious when exercised honestly and upon due consideration, where there is room for two opinions, however much it may be believed that an erroneous conclusion was reached. * * * " *Sweitzer* v. *Industrial Insurance Commission*, 116 Wash. 398, 401, 199 P. 724. *In re St. Paul & Tacoma Lumber Co.*, 7 Wash. (2d) 580, 110 P. (2d) 877.

Whenever an electric transmission line is erected, many citizens of the areas served become dependent upon that facility for light, heat and power. Once installed, its maintenance is necessary for their health, comfort and welfare.

It is common knowledge that hurricanes and tornadoes of unusual violence cause widespread destruction. It is also known that transmission lines are among the chief victims of that character of elemental disturbance. When extensively damaged, prompt repair of electric transmission lines and resumption of service become urgent public necessities.

Only recently Mother Nature in an angry mood forcefully emphasized engineer Shaw's statement that rights of ingress and egress to transmission lines are at times necessary so that repairs may be promptly made and electric service resumed. When "Hurricane Hazel," spawned on the restless waters of the Caribbean, swept across the Carolinas and Virginia on October 15, 1954, with wind velocity of 60 to 100 miles per hour, and thence buffeted her way on over other States and into the Dominion of Canada, she left in her wake widespread havoc and destruction. In the nature of things we should take judicial notice that no character of facilities suffered more from the violent swish and swirl of her skirts as she hurriedly traversed these areas than did electric transmission lines serving the public along

her course. The immediate repair of damaged transmission lines and resumption of electric service was an urgent and dire public necessity.

The exhibits and testimony are insufficient to establish that petitioner abused its discretion or acted arbitrarily or capriciously in attempting to acquire the general rights of ingress and egress over these tracts of land for the uses set out in the petitions.

Refusal to permit acquisition of the secondary easements or unlocated rights of ingress and egress over each tract of land as incidental and necessary to the erection, repair and maintenance of the transmission line constituted error for which a new trial must be had.

Petitioner is entitled to condemn the secondary easements on the two tracts of land. Yet award of compensation and damages, if any, caused adjacent lands by the erection and operation of petitioner's works should be made by the commission under proper instructions from the court. Thereafter the damages, if any, that may be sustained by the landowners, such as destruction of crops, shrubs, trees, fences, and the like, by use from time to time of the secondary easement, may be recovered through appropriate action when sustained.

■ Should the court have required petitioner to incorporate a description of Parcel B in its petition and describe its metes and bounds on a plat?

As we have said, when land or an interest therein is condemned, the condemnor is required to state the interest or estate to be taken and file a plat that describes the land in which an interest is sought, or that is "likely to be damaged." Sections 25-8 and 25-9, Code of 1950.

Sections 25-12 and 25-17 require that there be an award of compensation for the land or interest taken. They also provide for and contemplate that in addition to the compensation, there shall be an award of damages, if any, resulting *to the adjacent or other property* of the owner or to the property of any other person beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works.

Parcel B which is adjacent to Parcel A at the latter's southwest boundary, was conveyed to Webb by the same deed that conveyed Parcel A, but by separate and distinct description. The right of way for the transmission line is located wholly upon Parcel A, somewhat remote from Parcel B, and the unlocated right of ingress and egress is confined entirely to Parcel A.

The fact that Parcel B was acquired in the same deed that conveyed Parcel A is of no significance. It is of some moment that the tracts are contiguous or adjacent to each other along part of their boundaries. Yet the most significant circumstances to be weighed are whether or not there is physical unity or functional unity of the tracts, and of the two, the latter is the most significant.

"To constitute a unity of property within the rule, there must be such a connection or relation of adaptation, convenience, and actual and permanent use as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcels left, in the most advantageous and profitable manner in the business for which they are used. If the separate tracts of which a part of one is taken are not put to a joint use, they cannot be considered as one parcel in assessing damages to the land not taken, and this is especially true where the tracts are separated by a street or a watercourse." 29 C. J. C., Eminent Domain, § 140, p. 982.

"In the case at bar the lots appropriated, and the lots remaining, abut on either side of a public alley. The fact that the alley separated the two blocks of lots did not necessarily establish the two blocks of lots as separate tracts. The use to which the lots were put determine whether it was one tract or two separate tracts. Unity of use is the principal test. * * * " *Deercreek Local Board of Education* v. *Payne,* 86 Ohio App. 319, 88 N. E. (2d) 226.

█ Though Parcel B adjoins Parcel A, we cannot say as a matter of law that it is "likely to be damaged" by the construction and operation of petitioner's transmission line.

If Webb can show that Parcel B will be damaged by the taking of the easements and construction and operation of petitioner's works, then he is entitled to do so and recover the damages proved. However, we do not know if Parcel B is woodland or tillable land, or used in connection with Parcel A, and for the court to require a description of it in the petition as if rights or interests were to be acquired in that tract, or that it was likely to be damaged merely because it is contiguous to Parcel A, was not warranted. It may have caused the commissioners to believe that rights and interests were to be acquired therein or that it was "likely to be damaged," and petitioner should not be required to incorporate a description of that parcel in its petition.

Instruction No. 5-A, which petitioner requested be given the commissioners, was refused, and instruction No. 17, tendered by the landowners was granted. The respective rulings of the court upon these instructions, which are set out below, are assigned as error.

## "Instruction No. 5-A

"The Court instructs the Commissioners that the burden of proving the damages, if any, to the residue of the owner's tract of land adjacent to the easement of right of way herein sought to be condemned, is upon the landowner and unless you believe from the evidence, including your view of the land, that such damages will result, then you must not include such damages in your award."

## "Instruction No. 17

"The Court instructs the Commissioners that in assessing the damages to the land owner they may take into consideration the expense and inconvenience, if any, to which the land owner will be put by throwing the property open while the electric line is being constructed through it, and also the cost of crops, grass, timber, fencing, wood, and like

expenses, if any, necessary to adjust the land owner's property to the new situation, as proper elements of damage; and the Court further instructs the Commissioners that the inconveniences, if any, which a land owner will suffer in the future operation of his property as a result of the taking of a right of way by the Condemnor and the existence of its works and lines is a proper element of damage."

Section 25-17 of the Code directs that the commissioners view the land in which an interest is sought to be taken, the adjacent land and property affected by the construction and operation of condemnor's works, and hear "such proper evidence as may be offered by the parties" to prove the amount of compensation, and damages, if any, that should be awarded, but it does not require the owners to present any evidence. The commissioners shall then, from their view and the evidence, if any be heard, ascertain what will be just compensation for the land or interest to be taken "and assess the damages," if any, done to the adjacent land or other property. Yet petitioner insists that it was entitled to have the commissioners told that the burden was upon the landowner to prove that damage was done to the land before they could include any damages in their award.

To sustain its position petitioner relied upon *U. S.* v. *Crary,* 2 F. Supp. 870, 876, wherein the court said:

"I believe that the burden of proving damages to the residue, if any, rests on the defendant who claims such damages. This assertion seems to me to require little or no discussion. * * *

"It is the defendant who affirms that there will be damages to the residue, and it is in accord with the great weight of authority and with reason and fairness that the defendant should have the burden of proving such damages." *U. S.* v. *Powelson,* 319 U. S. 266, 63 S. Ct. 1047, 87 L. ed. 1390; *Westchester County Park Commission* v. *U. S.,* 143 F. (2d) 688.

With petitioner's contention we cannot agree. It is evident from the wording of section 25-17 that no evidence or

testimony need be offered by the landowner. Yet if from a view of the premises, the commissioners believe that the property adjacent to that taken will be damaged, then damages, in addition to the compensation awarded for the land or interest taken, should be assessed. They may award damages without hearing or considering any other evidence if they believe from their view of the premises that the construction and operation of petitioner's facilities will inflict damages.

Instruction No. 5-A was properly refused.

Use of the phrase "throwing the property open" employed in instruction No. 17, and reference to specific and independent items of damage, i. e., destruction of crops, grass, timber, fencing, wood, and the like, was objected to by the petitioner. It is insisted that use of the phrase was an assumption by the court without proof that the property would be thrown open. Mention of the items of damage is objected to because it calls attention to and invites the jury to arrive at its award by adding up independent and specific items and fails to inform the jury of the proper method of assessing damages, if any, to the residue of the property.

In *Highway Commissioner* v. *Fletcher*, 153 Va. 43, 149 S. E. 456, it is said that independent and separate items of damage should not be added together and the over-all sum thus determined but all of the items may be considered in ascertaining whether or not the property has been depreciated in value when considered in connection with the peculiar benefits brought about by the condemnation and improvements.

The assumption that the property will be thrown open while the electric line is constructed, and use of the phrase, "throwing the property open," were improper. If the landowner be inconvenienced and damaged by entry upon his property, proof of those facts and an award of damages thereby sustained are warranted. Yet the assumption in an instruction that those facts have happened or will take place is not justified.

Independent items of probable damage should not be pointed out in a way that prompts the commissioners to add them up and thus arrive at an award. But the commissioners should have been told that in determining what damage, if any, had been done to the residue of the land, they might take into consideration the destruction of crops, fences, trees, and the like, if they believe they would be or had been destroyed in the construction and operation of petitioner's works.

By assignment of cross-error the landowners claim interest upon the awards from February 19, 1953, the date the awards were made and the report filed. However, the question raised by that claim is now moot, for there must be a re-assessment of compensation and damages by another commission.

For the reasons stated the order appealed from is reversed, the awards set aside, and this cause is remanded to the lower court for further proceedings therein not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*