STATE OF WEST VIRGINIA BY THE STATE ROAD COMMISSION AND PATRICK C. GRANEY, SR., STATE ROAD COMMISSIONER, *etc.*

*v.*

PROFESSIONAL REALTY COMPANY

(CC849)

Submitted September 16, 1959. Decided October 13, 1959.

*Bernard Duffy Horan,* for petitioners.

*Thornhill & Thornhill, W. A. Thornhill, III, W. A. Thornhill,* for defendant.

CALHOUN, JUDGE:

In this eminent domain proceeding instituted in the Circuit Court of Raleigh County, the petitioners seek to

acquire certain real estate owned by the defendant, situated in the City of Beckley, in connection with a project to relocate and make a controlled-access facility (freeway) of a portion of State Route No. 16, known as the Beckley-Mabscott Road. Petitioners seek also to acquire and terminate defendant's right of vehicular access from his remaining real estate to the relocated highway. If such right of access were extinguished, the landowner would still have a means of vehicular access to the highway, but not from the portion of his remaining real estate which would abut directly upon the relocated highway.

To the original petition, defendant demurred on two grounds: (1) The allegations of the petition are insufficient to comply with Chapter 157, Acts of the Legislature, 1955, Regular Session, (Code, 17-4-40); and (2) the petition is "multifarious" and "contains two distinct matters and causes" in that both the State Road Commission and the State Road Commissioner are made petitioners. The first point of the demurrer was sustained, and the second overruled.

Thereafter, the court, upon motion of petitioners, permitted an amendment of the petition. A demurrer was filed to the petition, as amended, upon the same two grounds. Again the court sustained the demurrer as to the first ground, and overruled it as to the second. Upon the court's own motion, the questions arising upon these two points of the demurrer to the amended petition were certified to this Court, in accordance with the provisions of Code, 58-5-2. The two points of the demurrer will be considered in inverse order.

Chapter 157, Acts of the Legislature, Regular Session, 1955, gives to "the state road commissioner" authority to establish controlled-access facilites and to acquire property in connection therewith by condemnation or otherwise. The state road commission is not mentioned in that connection. Code, 17-4-5, as amended, however, in broad, comprehensive terms, provides that either the state road commissioner or the state road commission

may acquire property by eminent domain proceedings in connection with the state highway system. With reference to this statutory provision, the Court stated in the case of *State* v. *Horner*, 121 W. Va. 75, 79, 1 S. E. 2d 486, 488: "This is a plain and unambiguous provision conferring a power upon two separate and distinct agencies of the state, which power may be exercised by either, independently of the other, and is of such a nature as needs no interpretation." Counsel for petitioners state that both petitioners were joined in this instance out of an abundance of precaution because of the fact that Chapter 157, Acts of the Legislature, Regular Session, 1955, standing alone, specifically gives the right to condemn property for controlled-access highway purposes only to the state road commissioner. The Court holds that the provisions of Code, 17-4-5, are sufficiently comprehensive to grant either to the state road commissioner or to the state road commission the right to institute this particular proceeding. The fact that both were joined as petitioners does not make the petition multifarious. But one cause of action is asserted. In this connection the demurrer at most asserts only a misjoinder of parties. It may be superfluous to note that but a single right may be acquired. The trial court properly overruled the second point of the demurrer.

The provisions of Chapter 157, Acts of the Legislature, Regular Session, 1955, added to Chapter 17, Article 4 of the Code of 1931, as amended, seven new sections which are designated Sections 39-45, inclusive, all relating to controlled-access facilities as part of the state highway system. In asserting by demurrer that the allegations of the amended petition are insufficient, the defendant relies upon the italicized portion of the following language in Section 40: "The state road commissioner is hereby authorized to plan, construct, designate, establish, regulate, vacate, alter, improve, maintain, and provide controlled-access facilities for public use as a part of the state road system *wherever present or reasonably anticipated future traffic conditions render such special*

*facilities necessary. * * *"* (Italics supplied). In this connection the defendant in its demurrer asserts that, though the petition alleges that it is necessary that defendant's right to vehicular access to the proposed road be acquired by the petitioners, such allegation is a mere conclusion of law "and is erroneous both as to the existence of the necessity and as to the right of the petitioner to acquire defendant's right of access"; that, under the requirements of Code, 17-4-40, an essential prerequisite to the designation of any road as a controlled-access facility is the existence of the fact (as distinguished from a determination of that fact by the commissioner) that traffic conditions render such controlled-access facility necessary; that the effect of the statutory language quoted above is to place upon the petitioners a burden of alleging, not simply a conclusion of law or an opinion, but the actual facts showing such necessity; and that the necessity for making the highway in question a controlled-access facility is not sufficiently alleged, "but to the contrary, the only allegation of such necessity is to the effect that the State Road Commissioner has determined the necessity."

In their written brief, counsel for the defendant state that "the burden of proof as to whether traffic conditions do or do not render controlled-access facilities necessary is on the State because otherwise the defendant would have to prove a negative." This implies that there is authority and jurisdiction in the circuit court to determine, upon proof, whether or not the proposed controlled-access facility is necessary.

In an effort to cope with the situation resulting from this point of the demurrer and the action of the trial court in sustaining it, petitioners amended their petition by the insertion of quite extensive language. Briefly summarized, the amended petition alleges in that connection that the Commissioner "has determined that present or reasonably anticipated future traffic conditions render a controlled-access (freeway) facility necessary," and that he has designated this portion of the highway as

a controlled-access facility; that the Commission has conducted an investigation to determine traffic data in connection with the highway in question; that vehicular speeds are comparatively slow and there is considerable traffic congestion on the portion of the highway in question; statistical data resulting from studies in other states are alleged to disclose that the flow of vehicular traffic is accelerated on controlled-access highways and that resulting highway accident rates are lessened; "that since the tract hereinbefore described, presently abuts on a public road at a place where vehicular access is to be denied, it is necessary that the right of said defendant to vehicular access from the residue of said defendant's land * * * be acquired in this proceeding * * * so that said right of vehicular access, as aforesaid, may be extinguished * * *;" that work on the project in question is now in progress; that, in connection therewith, it is necessary to pass over defendant's land; and that the rights sought to be acquired in this proceeding are "necessary for the construction of said public road aforesaid."

The right of a state to take private property for public purposes is an inherent attribute of sovereignty, irrespective of any constitutional or statutory provision. 29 C.J.S., Eminent Domain, Section 2, page 777. "It is an inherent, inalienable, sovereign right, and lies dormant in the state until the Legislature sees fit to exercise it, either directly, or by investing some corporation, or individual, with the power to exercise it." *Pittsburgh Hydro-Electric Co.* v. *Liston,* 70 W. Va. 83, 85, 73 S. E. 86, 87. The right of eminent domain may be vested by the legislature in the various subdivisions of the State, as well as in private ventures in which the public has a right to share. *State* v. *Horner,* 121 W. Va. 75, 1 S. E. 486.

Article III, Section 9 of the State Constitution is not a source of the power of eminent domain, but rather a restriction upon its exercise. It provides that private property shall not be taken or damaged for public use without just compensation and that, when required by

either of the parties, the compensation shall be ascertained by a jury of twelve freeholders. In consequence of such constitutional provision, the legislature has provided a method for judicial determination of such compensation. Code, 54-2. But such statutes provide a quite limited delegation to the judicial branch of the inherent power of the sovereign. The functions and power of the court in eminent domain proceedings do not exist inherently, but are wholly dependent upon legislative delegation thereof.

In the case of *Pittsburgh Hydro-Electric Co.* v. *Liston,* 70 W. Va. 83, 73 S. E. 86, in the third point of the syllabus, with reference to eminent domain proceedings, it is stated: "Courts are limited in their inquiry to the question, whether the particular service provided for is a public service." "When the court has determined that the use for which property is condemned is a public use, its judicial function is gone, and the legislative discretion is unrestrained. Whether the proposed plan will accomplish the end proposed, or to what extent it will be beneficial to the public, are not matters to be determined by the courts; these are matters belonging to the legislative discretion." *Charleston Natural Gas Co.* v. *Lowe & Butler,* 52 W. Va. 662, 664, 44 S. E. 410, 411. Obviously, under the statute, it is a judicial function also to ascertain the compensation for the property taken or damaged. *Gas Co.* v. *DeBerry,* 130 W. Va. 418, syl. 1, 43 S. E. 2d 408; *State* v. *Bouchelle,* 137 W. Va. 572, Syl. 2, 73 S. E. 2d 432.

Nevertheless, this Court has in many prior decisions pointed out the area of legislative discretion in connection with the delegation of powers of eminent domain. The necessity for the taking is a matter left to the sound discretion of the agency exercising the power of eminent domain under legislative authority, and the decision by it that a necessity exists will not be interfered with by the courts, unless the agency exercising the right "has acted capriciously, fraudulently, or in bad faith." *George* v. *City of Wellsburg,* 111 W. Va. 679, syl. 1, 163 S. E.

431; *City of Huntington* v. *Frederick Holding Co.*, 85 W. Va. 241, 101 S. E. 461; *Pittsburgh Hydro-Electric Co.* v. *Liston*, 70 W. Va. 83, 73 S. E. 86. The amount of land necessary to be taken by eminent domain proceedings for state road purposes is left to the discretion of the state road commissioner, "and such discretion will not be interfered with by the courts unless there is a showing of bad faith, or that the same has been capriciously or fraudulently exercised." *State* v. *Horner*, 121 W. Va. 75, syl. 3, 1 S. E. 2d 486; *Shelton* v. *State Road Commission*, 113 W. Va. 191, 167 S. E. 444; *State* v. *Bouchelle*, 137 W. Va. 572, 73 S. E. 2d 432, 435. Substantially the same range of discretion applies in case of internal improvement companies in the exercise of their delegated power of eminent domain. *W. Va. & Maryland Power Co.* v. *Raccoon Valley Coal Co.*, 93 W. Va. 505, 117 S. E. 891; *Pittsburgh & W. Va. Gas Co.* v *Cutright*, 83 W. Va. 42, 97 S. E. 686; *Carnegie Natural Gas Co.* v. *Swiger*, 72 W. Va. 557, 79 S. E. 3; *Virginia Electric and Power Co.* v. *Webb*, 196 Va. 555, 84 S. E. 2d 735.

Courts in the exercise of jurisdiction in eminent domain proceedings must observe constitutional principles relating to separation of powers and functions among the three branches of government. Nichols on Eminent Domain (3d Ed.), Vol. 1, Section 3.2, page 203. "The jurisdiction of a court or tribunal in condemnation proceedings is altogether statutory and limited, and can be exercised only in the manner and to the extent provided by statute, in force at the time the proceedings are instituted; and generally the court may adjudicate only questions which fairly arise and are relevant to the right of eminent domain, as provided by statute." 29 C. J. S., Eminent Domain, Section 232, pages 1193-4. "The power of condemnation is legislative, not judicial, and exists in the courts only by express authorization and only to such an extent as has been expressly vested in them." *Wellsburg & State Line Railroad Co.* v. *Pan Handle Traction Co.*, 56 W. Va. 18, 23, 48 S. E. 746. See also *McConiha* v. *Guthrie*, 21 W. Va. 134, 142; *State* v. *Bouchelle*, 137

W. Va. 572, 73 S. E. 2d 432, 434; *West* v. *Anderson*, 186 Va. 554, 42 S. E. 2d 876.

Code, 54-2-1, which deals with the "jurisdiction" of a circuit court in eminent domain proceedings, provides for the appointment of commissioners merely "to ascertain a just compensation to the owners of the estate proposed to be taken." If a jury is required, it is limited likewise to the single issue of "ascertaining the damage or compensation to which the owner of the land proposed to be taken is entitled." Code, 54-2-10.

The jurisdiction of the circuit court is invoked by the filing of a petition by the condemnor. Code, 54-2-2, sets forth what such petition shall contain. This Court has held that a petition is sufficient if it substantially conforms to the requirements of the statute. *Board of Education* v. *Campbells Creek Railroad Co.*, 138 W. Va. 473, syl. 1, 76 S. E. 2d 271; *Charleston & Southside Bridge Co.* v. *Comstock*, 36 W. Va. 263, syl. 4, 15 S. E. 69. See also *City of Huntington* v. *Frederick Holding Co.*, 85 W. Va. 241, 101 S. E. 461; *County Court* v. *Thornburg*, 65 W. Va. 185, syl. 1, 63 S. E. 975; *State Road Commission* v. *McMurray*, 103 W. Va. 346, syl. 2, 137 S. E. 530.

This case involves two related but wholly separate questions. One question relates to the state road commissioner's determination of the necessity and the extent of the taking of defendant's land by eminent domain proceedings. We have already observed that this involves an exercise of the legislative discretion reposed in petitioners by the legislature, and that the exercise of that discretion is wholly beyond the control of the courts unless exercised fraudulently, capriciously, or in bad faith.

The other question raised by the demurrer relates to the determination by the commissioner that the portion of the highway in question is and should be a controlled-access facility. The demurrant asserts in this connection that petitioners should allege facts to support the commissioner's determination that "present or reasonably

anticipated future traffic conditions render such special facilities necessary." It may be questionable whether, in any event, the circuit court would have authority and jurisdiction to determine this collateral issue in the purely statutory eminent domain proceeding.

Counsel for the landowner isolates the portion of the statute quoted immediately above and emphasizes it without reference to other statutory provisions. Statutes relating to the same subject, and particularly those enacted at the same time must be considered in *pari materia*.

With reference to the construction of the statute, counsel for petitioners, as well as counsel for defendant, refer to legislative journals in order to show the history of this particular enactment, the nature of the amendments, and observations made by members of the legislature at the time the enactment was under consideration. Taking all the related statutes into consideration, we do not feel that the meaning of this particular statute is obscure or ambiguous and, therefore, a resort to the legislative journals is unnecessary and unwarranted.

A broad discretion has been accorded to the state road commissioner by statutes as interpreted by prior decisions of this Court, and we may assume that if the legislature had intended a drastic transformation of such law, it would have done so by clear and unmistakable language. *State* v. *Brewster*, 140 W. Va. 235, 84 S. E. 2d 231; *Coal & Coke Railroad Co.* v. *Conley*, 67 W. Va. 129, 67 S. E. 613; *Webb* v. *Ritter*, 60 W. Va. 193, 54 S. E. 484.

The broad discretion accorded to the state road commissioner has been recognized in various situations administrative in nature, as distinguished from his exercise of a discretion directly relating to eminent domain. In this category are included actions of the commissioner in discontinuing, relocating, constructing, reconstructing, repairing and maintaining highways. *Heavner* v. *State Road Commissioner*, 118 W. Va. 630, 191 S. E. 574; *White*

v. *McCroskey*, 122 W. Va. 261, 8 S. E. 2d 827; *State* v. *Darnall*, 129 W. Va. 159, 38 S. E. 2d 663; *Brady* v. *Smith and Wallace*, 139 W. Va. 259, 79 S. E. 2d 851. Generally, the discretion of the commissioner in relation to such matters of an administrative nature will not be interfered with unless its exercise is shown to have been arbitrary, capricious, fraudulent or in bad faith.

In the case of *Liberty Central Trust Co.* v. *Greenbrier College for Women*, 50 F. 2d 424, affirmed, 283 U. S. 800, 51 S. Ct. 493, 75 L. ed. 1422, which involved a suit to enjoin the state road commission from building a road over certain real estate belonging to the Greenbrier College for Women in Greenbrier County, the Court, in denying the injunction and dismissing the suit, stated: "The matter of the exercise of the power conferred by the statute is placed within the discretion of the body in charge of road building in the state, the road commission, and that body is presumed, *until the contrary is conclusively shown,* to have acted properly in the exercise of that discretion." (Italics supplied).

We believe that when the legislature provided that a controlled-access facility may be provided "wherever present or reasonably anticipated future traffic conditions render such special facilities necessary", it was, in effect, merely giving recognition to the rule established by various decisions of this Court to the effect that the commissioner, in exercising the discretion accorded to him in relation to such matters, may not act arbitrarily, capriciously, fraudulently or in bad faith.

The new allegations embodied in the amended petition tend to disclose that the commissioner did not, in fact, act arbitrarily. But even in the absence of such allegations in the petition, the Court must presume that he, as a public official, acted in good faith in designating this portion of the highway in question as a controlled-access highway. A public official, in the performance of official duties imposed upon him by law, is presumed to have done his duty and to have acted in good faith and from

proper motives until the contrary is shown. *Title Ins. Co.* v. *Carver*, 113 W. Va. 58, 166 S. E. 697; *Consentina* v. *State Compensation Commissioner*, 127 W. Va. 67, 31 S. E. 2d 499; *Price* v. *Sims*, 134 W. Va. 173, 58 S. E. 2d 657; *Staley* v. *Wayne County Court*, 137 W. Va. 431, 73 S. E. 2d 827; *State* v. *Kelly*, 140 W. Va. 177, 83 S. E. 2d 465. It follows that the petitioners were not required in their petition to allege facts disclosing negatively an absence of an arbitrary, capricious, or fraudulent exercise of the discretion reposing in the state road commissioner. If one asserts the contrary in a proper legal proceeding, he must do so by proper allegation and by sufficient proof to overcome the presumption. For the reasons stated, the trial court erred in sustaining the first point of the demurrer.

The judgment of the Circuit Court of Raleigh County in relation to the demurrer to the amended petition is affirmed in part and reversed in part; and the case is remanded to that court with directions to proceed in a manner consonant with the principles enunciated herein.

*Rulings affirmed in part;*
*reversed in part.*