Oscar D. WILLIAMS, Plaintiff,

v.

NORTHERN NATURAL GAS COMPANY, a corporation, Defendant.

Civ. No. 639.

United States District Court
N. D. Iowa, Central Division.

Dec. 29, 1955.

Willard M. Freed, Gowrie, Iowa, Maurice J. Breen, Elmo E. McCormick (Breen, Breen & McCormick), Fort Dodge, Iowa, for plaintiff.

Bert B. Burnquist (Burnquist, Helsell & Burnquist), Fort Dodge, Iowa, Lawrence I. Shaw, F. Vinson Roach, Dale TeKolste, Ralph P. Blodgett, Omaha, Neb., for defendant.

GRAVEN, District Judge.

In this action the plaintiff, a landowner, seeks to recover damages from the defendant growing out of the defendant's actions in connection with its pipeline easement across his land. The plaintiff is a citizen of the state of Iowa. The defendant, hereafter referred to as the company, is a corporation organized and existing under the laws of the state of Delaware engaged in the distribution of gas. The amount in controversy, exclusive of interest and costs, is in excess of $3,000. The action was originally commenced in the District Court of Iowa in and for Webster County, from which it was removed to this Court. The case was tried to the Court.

The plaintiff is the owner of a tract of land containing approximately 8.75 acres. His father was the prior owner. There are no buildings on the land. The plaintiff lives in the nearby town of Lehigh, Iowa. The tract is located on the Des Moines River and is what is known as bottom land. It is overflowed when the river reaches a very high flood stage.

The tract is triangular in shape. Bordering the river is a belt of timber consisting of cottonwood trees. The balance of the tract is largely tillable land.

In 1930 the plaintiff's father, the then owner of the tract, granted an easement, dated December 3d, 1930, to the Missouri Valley Pipe Line Company which was the former corporate name of the defendant. The pertinent portions of that easement are as follows:

"That for the consideration hereinafter expressed, the undersigned (herein called the Grantor, whether one or more) does hereby Grant and Convey unto Missouri Valley Pipe Line Company, a Corporation, (herein called Grantee) its successors and assigns the right-of-way and easement to construct, maintain and operate pipe lines and appurtenances thereto over and through the following described lands * * *.

"To Have And To Hold unto said Grantee, its successors and assigns, so long as such lines and appurtenances thereto shall be maintained, with ingress to and egress from the premises, for the purpose of constructing, inspecting, repairing, maintaining, and replacing the property of Grantee above described, and the removal of such at will, in whole or in part.

" * * * [the Grantee] * * * hereby agrees to bury all pipes to a sufficient depth so as not to interfere with cultivation of soil, and to pay any damages which may arise to growing crops or fences from the construction, maintenance and operation of said pipe; * * * Should more than one pipe line be laid under this grant at any time, the sum of Fifty cents per lineal rod for each additional line shall be paid, besides the damages above provided for.

" * * * * *

"Grantee Company further agrees to replace and/or rebuild to the satisfaction of Grantor or his representative any and all damaged parts of all drainage systems that may be damaged by construction of said pipe lines; and also to pay any and all damages to premises, such as damage to trees, shrubs, and buildings—this in addition to damage to crops and fences.

"The consideration for this grant is the sum of Fifty cents per lineal rod for the entire distance over which such pipe line shall traverse said lands. One dollar ($1.00) thereof has been paid on the execution and delivery of this instrument. To effectuate this grant the remaining balance must be paid after final survey and ascertainment of the actual length of such line over said lands. The Grantee herein shall have no right to enter said lands for the purpose of constructing such lines until said entire consideration has been fully paid; nor unless the same is paid within twelve months from the date hereof."

In 1930 the company laid a pipeline across the tract. The line came across the river to the land and then on across it to adjoining land. That line is hereafter referred to as the original line. The pipe used was 20 inches in diameter. The pipe was laid in a ditch which was about 3 or 4 feet in depth and about 20 to 24 inches in width. The pipe used was of the type and kind then in general use. The sections of pipe were not welded together. The ditch was apparently dug without the use of machinery. The digging of the ditch for the original line occasioned only temporary inconvenience to the owner and temporary damage to the land. In digging it the defendant made use of about a 20-foot strip through the strip of timber and across the land. There was and is a layer of gravel and some veins of coal underlying the land. The parties are in controversy as to the nature, extent, and value of the gravel and coal.

Sometime prior to 1953, the defendant became concerned about the safety of its pipeline across the plaintiff's land.

Some river erosion had commenced at the extreme upper end of the land. The pipe was contained in a comparatively shallow ditch. It was the view of the defendant that at the time of high flood the pipe might become uncovered and when that occurred the pipe would bow upward and the non-welded joints would give way and that a serious break might occur. In 1953 following surveys made by the defendant, it put in a line of welded pipe in a deeper ditch about 50 feet away from the original line. The new ditch averaged from 14 to 15 feet in depth. In relocating its pipe line the defendant used modern excavating machinery consisting of a drag line, bulldozers, and caterpillar tractors. Because of the use of such equipment and the deeper depth of the ditch, the defendant made use of a strip from 100 to 200 feet wide across the plaintiff's land. The defendant removed timber from about a 200-foot strip. The timber removed by the defendant was buried in the ditch. Following the laying of the new pipe, the old pipe was removed and the old ditch covered. In November, 1953, the plaintiff was notified in writing by the defendant that he was not to excavate soil, gravel or coal within 100 feet of the new line as such operations might interfere with the line.

The plaintiff, among other damages, seeks to recover for the damages to the crop and timber. The defendant admits its liability for such damages but controverts the amount claimed therefor by the plaintiff. The plaintiff claims that the change in the line and the manner in which the change was made caused other substantial damage to the premises for which he seeks recovery. Part of that claim is based upon the premise that the written notice given him by the defendant in regard to not excavating within 100 feet of the defendant's line has deprived him of the gravel and coal deposit within that area. It is the view of the Court that the question as to the legal status and effect of that notice is not involved in this action. The other items of damage claimed by the plaintiff are premised upon two theories: one, that the defendant has made use of the easement beyond its scope and, the other, that the defendant was guilty of negligence in connection with such use.

The first premise raises questions as to the use of an easement by the grantee thereof. It is generally stated that the grantee of an easement is entitled to do what is reasonably necessary for full and proper enjoyment of the rights granted him under the easement. See, e. g., Unverzagt v. Miller, 1943, 306 Mich. 260, 10 N.W.2d 849, 851–852; Ricenbaw v. Kraus, 1953, 157 Neb. 723, 61 N.W.2d 350, 355; Scheeler v. Dewerd, 1950, 256 Wis. 428, 41 N.W.2d 635, 637; 1 Thompson, Commentaries on the Modern Law of Real Property § 368 (1939); 2 Id. § 572. The purposes for which an easement is granted have great bearing upon what rights the easement holder possesses and to what uses he may subject the property. Unverzagt v. Miller, supra; Tiffany, The Law of Real Property § 802 (3d ed. 1939). "The extent of an easement created by a conveyance is fixed by the conveyance." 5 Restatement, Property § 482 (1944). It has been said that if the details of an easement are obscure, a "reasonably convenient" use is intended. 2 American Law of Property § 8.66 (1952). However, the easement holder may not increase the servitude upon the grantor's property by enlarging on the easement itself. McCullough v. Broad Exchange Co., 1st Dept., 1905, 101 App.Div. 566, 92 N.Y.S. 533, 536; S. S. Kresge Co. of Michigan v. Winkelman Realty Co., 1952, 260 Wis. 372, 50 N.W.2d 920. Questions as to proper uses of an easement and to what constitutes an increase in the servitude on the grantor's property are largely factual. Cantieny v. Friebe, 1954, 341 Mich. 143, 67 N.W.2d 102, 103; Unverzagt v. Miller, supra.

The plaintiff contends that the 1953 operations were beyond the scope of the rights granted in 1930 under the easement. In his brief at page 3 he states his position clearly:

"When this easement was granted, a gas line was no burden to any land. A few men went along with spades and picks, and dug a ditch three or four feet deep and a couple of feet wide. The pipe was put in, and covered up. Obviously it didn't even go below the top soil so, when the ditch was finished, the top soil would be still top soil, just the same as it always had been. Now, in the passing of a quarter of a century, the erstwhile pick and shovel brigade gives way to drag lines operated from caterpillars, bulldozers powered by caterpillars, and heavy machinery of all kinds, and at least according to this particular company's officials this type of machinery was so large that it required a right of way of 200 feet in order to operate successfully."

In support of his claim that the company's use has exceeded the scope of the easement, he cites United States v. Johnson, D.C.Wash.1933, 4 F.Supp. 77, 78, where the Court held that a grant under a 1926 easement for use as a " 'safe wagon road' " would not be expanded to include use by automobiles in 1933. Such use was thought to be an unreasonable burden on the land of the grantor of the easement. The view there taken is opposed by the more liberal position taken by the Iowa Supreme Court in McDonnell v. Sheets, 1944, 234 Iowa 1148, 15 N.W.2d 252, 253, 156 A.L.R. 1043. In that case a 1913 instrument gave to the grantee " 'the privilege of ingress and agress to the rear of [the grantee's] property, *with team and wagon,* \* \* \*.' " (Emphasis supplied.) The Iowa Supreme Court construed this not as limiting the use to team and wagon traffic in 1944, but instead as showing that a vehicle driveway, rather than a footpath, was intended.

■ The scope of an easement was also dealt with by the Iowa Supreme Court in the rather recent case of Loughman v. Couchman, 1951, 242 Iowa 885, 47 N.W.2d 152. In considering a sewer easement arising by prescription, the Court there recognized that passage of time could authorize a reasonable increase in use by an easement holder. Although holding that, under the facts, the use in controversy constituted an unreasonable burden upon the servient estate, the Court was of the view that a "normal development" in the use by the easement holder would be permissive. From these cases it would seem that, when determining the scope of an easement, a reasonable increase in the use by the easement holder is permissible.

■ The claim of the plaintiff in its broader aspects is that the replacing of the line and the manner in which it was done constituted a surcharge upon the servient land. That claim involves the question as to whether the use made by the defendant was a reasonably necessary and convenient use and in accord with the "normal development" of that use. That claim requires a consideration of the wording of the instrument granting the easement in question. Tiffany, op. cit. supra, § 802. It also requires a consideration of the surrounding conditions and circumstances. The stated purpose of the easement is for the "constructing, inspecting, repairing, maintaining, and replacing" of pipelines across the land in question and the "removal" of the same "at will, in whole or in part." Not many of the grants of easements considered in the different cases contain such a broad statement of purposes as contained in the easement in question. Since the purpose of "replacing" was specifically set forth in that easement, it seems clear that some replacement of the original pipe line was in the contemplation of the parties to it. It was shown that the machinery and methods used by the defendant in excavating for the relocated line were in accord with the present practice of those engaged in the same or similar type of excavation. The escape of gas is fraught with dangerous potentialities and distributors of it must in the installation and maintenance of their distribution lines exercise care commensurate with such potentialities. See annotations

25 A.L.R. 262; 29 A.L.R. 1250; 47 A.L.R. 488; 90 A.L.R. 1082; 138 A.L.R. 870. See also annotations 13 A.L.R.2d 1396 and 26 A.L.R.2d 136. In view of such potentialities and the degree of care with which the defendant is chargeable, it seems clear that the defendant was justified in replacing its line across the plaintiff's land in order to avoid the uncovering of its original pipe and the possible breaking of it and that such replacement did not constitute a surcharge upon the servient land. It is the view of the Court that the replacing of the line by modern machinery instead of by hand labor constituted a normal development of the use to which the defendant was entitled and did not constitute a surcharge upon the servient land. There inheres in the claim of the plaintiff referred to the contention that the laying of the pipe in a new location constituted a surcharge upon the servient land. The grant of an easement for a pipeline does not give the easement holder the right to construct an additional line across the servient land. Winslow v. City of Vallejo, 1906, 148 Cal. 723, 84 P. 191, 5 L.R.A., N.S., 851. The plaintiff does not claim that the new line constituted an additional line. The easement provides for the payment by the defendant of fifty cents per lineal rod for an additional line. In the present case that would amount to only a few dollars. In the case of City of Lynchburg v. Smith, 1936, 166 Va. 364, 186 S.E. 51, 54, the city of Lynchburg was granted an easement to " 'lay, construct, operate, inspect, repair and perpetually maintain" ' a line of water pipe on the land there involved. The wooden water pipe originally placed on the land became so decayed that it became necessary to replace the line. The city proposed to place the replacing line about 6 feet away from the old line and then remove the old line. The lower court enjoined the city from placing the replacing line anywhere except on the site of the replaced line. On appeal the action of the trial court was affirmed. The easement of the city differed from the easement of the defend-

ant in the present case in that it did not include the right of replacement of the line. The easement involved in the present case grants to the defendant in broad terms the right to replace its pipe line across the land of the plaintiff. It does not purport to limit the location of the replacing line to the location of the replaced line. It is the view of the Court that the defendant was not under the terms of its easement required to locate its replacement line upon the site of the replaced line. There might be situations where a particular location of a replacing line would impose undue hardship upon the owner of the servient land while another location equally suitable would not. In such a case the use of the location which would cause undue hardship would doubtless be regarded as an unreasonable use of the easement. In the present case tests made by borings showed that there was no substantial difference in the depth of the veins of coal under the relocated line and the original line. Those tests further showed that the layer of gravel under the relocated line was thinner than it was under the original line.

It is the claim of the plaintiff that the defendant was guilty of negligence in connection with the replacement of its pipeline. The plaintiff seeks to recover damages alleged to have been sustained by him because of such negligence. It is also the claim of the plaintiff that he sustained permanent damages to his premises because of the replacement of the pipeline. He seeks to recover such damages. In that connection the plaintiff claims that he is not limited to damages to his growing crops and timber as asserted by the defendant. It would seem that there inheres in this claim the theory that he is entitled to recover as damages the difference in the value of his premises before and after the replacement of the pipeline. The easement in question specifically provides that the defendant will pay damages to growing crops and trees occasioned by the replacement of its pipeline. It

seems clear from the authorities that the liability of a pipe line company for damages occasioned by it in the use of a pipeline is as follows: if the type of damage for which recovery is sought is one for which the company specifically agreed to compensate the owner of the servient estate, the company is liable even though it is not guilty of negligence[1]; if the item of damage is not one for which the company specifically agreed to compensate the owner of the servient estate, it is liable only if it is guilty of negligence. 4 Summers, The Law of Oil and Gas § 759 (1927); Tiffany, op. cit. supra, § 771a (Supp.1955). An owner of the servient estate seeking to recover from the company on the latter ground has the burden of establishing that the company was guilty of negligence. 4 Summers, op. cit. supra, § 759. The rules just stated find support in the cases next referred to.

The case of Lone Star Gas Co. v. Hutton, Tex.Com.App.1933, 58 S.W.2d 19, involved an action by the owner of the servient land to recover damages against a pipeline company for permanent injury to the land in connection with the construction of the pipeline. The easement promised that the pipeline company was to pay any damages that might arise to growing crops and fences on the land. The Court held that absent negligence on the part of the pipeline company the owner could not recover other damages. The Court stated, 58 S.W.2d at page 21:

"The conveyance to the gas company expressly provided that it should have certain rights in and upon certain lands belonging to Hutton and his wife, and the gas company had the right of ingress and egress over and upon the lands for the purpose of exercising the rights given therein. The gas company, under the terms of the conveyance, had a legal right to locate, construct, maintain, and operate such lines across the land, and it is to be presumed that the grantors assented to bear all loss and take all profits which incidentally resulted from the exercise of those rights in a proper manner. If grantee exercised the rights conferred in the conveyance with due care and without negligence, then no damages were recoverable. * * *

"To hold in the face of the provisions contained in the deed that the gas company was not permitted to enjoy those privileges free from damages necessarily incident to the enjoyment of those rights, and permit the assessment of damages not due to the result of negligence or care on its part, would be a violation of its legal rights. The burden rested upon Hutton and wife to allege and prove that the gas company was guilty of negligence in this respect."

The recent case of Pridgen v. Shell Pipe Line Corp., Tex.Civ.App.1955, 279 S.W.2d 111, involved an action by the owner of the servient land to recover damages against the pipeline company. The trial court directed a verdict in favor of the pipeline company. On appeal that action was affirmed. The Court stated, 279 S.W.2d at page 113:

"Shell has constructed and is now maintaining a pipe line across the lands described in and as authorized by such right of way grant.

"The pleadings of appellants do not allege and there is no evidence showing or tending to show that Shell was negligent either in the construction or maintenance of such pipe line.

"The law is thoroughly settled that if Shell exercised the rights conferred upon it by the right of way grant, copied above, with due care and without negligence, then no

---

1. Illustrative of the fact that an action claiming abuse of the rights granted under an easement is a tort rather than a contract action is the late case of Griffeth v. Utah Power & Light Co., 9 Cir., 1955, 226 F.2d 661, 670–673.

damages can be recovered for injuries resulting therefrom. * *"

In a case where the owners of the servient land were making claims for damages somewhat similar to those made by the plaintiff in this case, and under a similar type of easement, the Mississippi Supreme Court in its opinion on rehearing in Transcontinental Gas Pipe Line Corp. v. Hill, Miss.1952, 57 So.2d 162, at page 163, stated:

"* * * we now say that it was the purpose of the court to hold, and we so hold, that the range of recovery to which the appellees in this case * * * would be entitled on proper proof, would be for damages, if any, to fences, improvements, growing crops, and timber, either on or off the right of way, resulting from the laying of the pipe line, either by proper or improper methods of construction, and for damages, if any, resulting from the failure of the appellant to bury its pipe line so as not to interfere with the cultivation of the land either on or off the right of way, and for damages, if any, resulting directly and proximately from faulty or improper methods of construction in the laying of the line."

In connection with this phase of his claim, it is the contention of the plaintiff that damages claimed constituted damage to his "premises" and that under the terms of the easement the defendant specifically agreed to pay such damage as constituted damage to his "premises" in connection with the replacement of its line. In one paragraph of the easement the defendant agrees to "pay any damages which may arise to growing crops or fences" from the "construction, maintenance and operation" of its pipeline. In another paragraph of the easement the defendant agrees to "pay any and all damages to premises, such as damage to trees, shrubs, and buildings—this in addition to damage to crops and fences." The plaintiff's claim as to this phase is based upon this latter paragraph. The United States Court of Appeals for the

Eighth Circuit in O'Connor v. Great Lakes Pipe Line Co., 1933, 63 F.2d 523, 524, had before it the problem of construing the word "premises" in an easement. There the company had agreed to pay "[a]ll damages to crops, surfaces, fences and premises * * *." The Court refused to construe "premises" to include depreciation in market value. The Court's reluctance to so extend the meaning of the word to include depreciation in market value is shown by the following passage from the opinion, 63 F.2d at pages 526–527:

"The trial court refers in its opinion to the association of the word 'premises' with the words 'crops, surfaces and fences' which precede the word 'premises,' and holds that the word 'premises' refers to things of a like nature, such as buildings, growing trees, etc., and that these are what was intended, that the use of the general word 'premises' preceded by the specific words conveys the inference that such use is intended to mean things of a like class or character. In other words, the well-known rule of ejusdem generis. The rule is stated in Swift & Co. v. Columbia Ry. Gas & Electric Co., 4 Cir., 17 F.2d 46, 48, 51 A.L.R. 983, as follows: 'And it is well settled that in such case the rule of construction known as Lord Tenderden's rule is applicable, that where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described—ejusdem generis.' [giving other citations] Calling upon that principle to help in the construction of this contract, it is apparent that the term 'premises' is used as a general term following the specific terms, crops, surfaces, fences, and that it should be limited to the things of a like nature, as the court aptly pointed out. It may fairly be said we think to refer to the land and its appurtenances necessarily used in the lay-

ing of the pipe lines or in repairing or maintaining the same."

The plaintiff claims that the rule of ejusdem generis, explained in the above quotation, can only be applied when the specific terms *precede* the general term. He claims that here, where the specific terms "such as damage to trees, shrubs, and buildings" *follow* the general term "premises," the rule does not apply. It appears that in numerous instances where the rule is stated, courts refer to the specific terms as preceding the general term, and also in most instruments, the construction of which have been under consideration by the courts, the same is true. See, e. g., Geer v. Birmingham, D.C.1950, 88 F.Supp. 189, 224, reversed on another ground, 8 Cir., 1950, 185 F.2d 82, certiorari denied, 1951, 340 U.S. 951, 71 S.Ct. 571, 95 L.Ed. 686. However, the rule is not so limited. City of Knoxville v. Brown, 1953, 195 Tenn. 501, 260 S.W. 2d 264, 268; Prudential Ins. Co. of America v. Fuqua's Adm'r, 1950, 314 Ky. 166, 234 S.W.2d 666, 670, 22 A.L.R.2d 803. In the latter case the Kentucky Court of Appeals explicitly stated the rule of ejusdem generis applied to a situation where the general word preceded the specific words, saying, 234 S.W.2d at page 670:

> "The doctrine of Ejusdem Generis based on the maxim expressio unius est exclusio alterius is: that, where general words are used, followed by a designation of particular things or subjects to be included or excluded as the case may be, the inclusion or exclusion will be presumed to be restricted to the particular thing or subject. Ballantine's Law Dictionary, 2nd Edition, Page 24. Literally translated, the phrase, expressio unius est exclusio alterius, means: the expression of one thing is the exclusion of another (of the same kind). Whilst the rule is more frequently applied to the construction of statutes and wills, it equally is applicable to other instruments of writing. E. H. Emery &

Co. v. American Ins. Co. of Newark, N. J., 177 Iowa 4, 158 N.W. 748."

This passage was quoted and approved in the City of Knoxville case, supra.

In the case of O'Connor v. Great Lakes Pipe Line Co., supra, the agreement of the pipe line company was to pay for damages "to crops, surfaces, fences and premises". In the present case the defendant agreed to pay damages to "premises, such as damage to trees, shrubs" and to "crops and fences." As heretofore noted, the United States Court of Appeals for this Circuit held that the clause it had before it did not encompass the payment of damages similar to those claimed in the present case. It is the view of this Court that the clause relied upon by the plaintiff does not encompass the payment to him of such claimed damages.

The plaintiff asserts that if it should be held that he is not entitled to recover damages on the theories just referred to, he is entitled to recover damages based on negligence apart from the damages to growing crops and timber. It is the claim of the plaintiff that as a result of the negligence of the defendant he has been left with what might be termed a "blighted area" along the relocated line. It is the claim of the plaintiff that the defendant made too wide an excavation. The evidence does not sustain that claim. It is also his claim that the defendant did not fill the ditch properly. The evidence does not sustain that claim. It is also his claim that the defendant was guilty of negligence in connection with the top soil. In the case of Transcontinental Gas Pipe Line Co. v. Hill, Miss.1951, 55 So.2d 170, a somewhat similar claim was made. The Court in that case made the following statement, 55 So.2d at page 171:

> "Witnesses for plaintiffs estimated rather large damage resulting from the dragging of 'top soil off cultivatable land.' We are not able to tell whether that had reference only to the right of way, or land

outside of the right of way, or both. If the testimony had reference to dragging soil upon the right of way, no damage could be recovered therefor unless it be shown that this was unnecessary in the proper construction of the pipe line. It appears that the trench had to be some six to eight feet deep and that the width of the excavation, including deposit of the soil from such excavation, was some six to seven feet. To do this work the soil had to be torn up, moved and redeposited. No damage to the top soil could be recovered if it resulted from the proper manner of doing the work."

On rehearing in that case the Court filed a clarifying opinion, Miss.1952, 57 So.2d 162. In that opinion the Court stated, 57 So.2d at page 163:

"Beyond the range of recovery would be the damages, if any, for the removal and destruction of top—soil where necessary to remove and destroy the same in the laying of the pipeline * * *."

■ In the present case the evidence does not sustain the claim of the plaintiff that the top soil damage was occasioned by the improper doing of the work by the defendant. The defendant, as heretofore noted, concedes liability for damages occasioned to the growing crop on the land and the timber by the replacement of the pipeline. The parties are in controversy as to the amount of such damages. It is established by the evidence that the defendant destroyed growing crops for a considerable width along the location of the new line. It is also established by the evidence that trees were destroyed in about a 200-foot strip. The trees were cottonwood trees. They were not of sufficient size to have a value for timber purposes. The plaintiff claimed that they might have some value for pulpwood. It does not appear that there was any available pulpwood market.

The plaintiff in his testimony described the growing crops and trees and gave his opinion as to the value of those destroyed by the defendant's operations. Because of the lack of any satisfactory standard of market value, the opinion of the plaintiff as to value was necessarily in the nature of an estimate and approximation. The defendant complains of the lack of clarity and certainty in the plaintiff's proof as to the value of the crops and timber.

■ The Court is of the view that the situation involving the damages to the growing crops and trees is such as to bring them within the doctrine of the cases which hold that where the fact of damage and the liability of the defendant therefor is clear and certain that recovery will not be denied because the nature of the damages is such that they lack certainty as to amount and the amount has to be more or less approximation. See Bigelow v. RKO Radio Pictures, Inc., 1946, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 1952, 194 F.2d 846, certiorari denied, 1952, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348; Straus v. Victor Talking Machine Co., 2 Cir., 1924, 297 F. 791, 802.

■ The amount of damages to be awarded the plaintiff as a result of the destruction of the growing crops and timber must necessarily be in the nature of an approximation. It is the finding of the Court that the plaintiff sustained damages to his growing crops in the amount of $100 and sustained damages to his timber in the amount of $200 by the replacement by the defendant of its pipeline on his land.

It is the holding of the Court that the plaintiff shall recover of the defendant the sum of $100 for damages to his growing crops and the sum of $200 for damages to his timber and that he be denied recovery for all of the other damages claimed.

It Is Ordered that judgment shall be entered accordingly.

It Is Further Ordered that under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the findings of fact, conclusions of law, and order for judgment shall constitute the findings of fact, conclusions of law, and order for judgment in this case.