THE BOARD OF EDUCATION OF KANAWHA COUNTY

*v.*

CAMPBELLS CREEK RAILROAD COMPANY, *et al.*

(CC 804)

Submitted April 29, 1953. Decided June 16, 1953.

LOVINS, JUDGE, not participating.

*Woodroe* and *Kizer, John O. Kizer,* for petitioner.

*Jackson, Kelly, Morrison* and *Moxley, Thomas B. Jackson,* for defendant.

BROWNING, JUDGE:

The Board of Education of Kanawha County instituted this proceeding in eminent domain in the Circuit Court of Kanawha County seeking to condemn certain lands owned by the Campbells Creek Railroad Company, a corporation, for the purpose of "constructing, maintaining and operating thereon a public school, playground and athletic field and for other educational pur-

poses; and will construct, maintain and operate thereon such a public school playground and athletic field."

The petition was demurred to, the demurrer sustained and the following points of law certified to this Court upon the Circuit Court's own motion: (1) In the absence of statutory authority, either express or necessarily implied, is a general statutory grant of authority empowering a county board of education to condemn land for educational purposes pursuant to Code, 18-5-8, sufficient in law for such a board to take by eminent domain lands of a railroad company, which is likewise empowered with general statutory authority to condemn real estate or other property pursuant to Code, 31-2-2?; (2) in the absence of any allegations evincing a superior right, either by virtue of statute or otherwise, is a petition of a county board of education sufficient in law to entitle it to take by condemnation lands of a common carrier engaged in the operation of a railroad in the State of West Virginia?; (3) does Code, 10-2A-1, et seq., contain the exclusive procedure to be followed by a county board of education in condemning lands for an athletic field?; and (4) must a petition in eminent domain by a county board of education seeking to acquire lands for a public school playground and athletic field describe separately so much of the lands sought to be taken for use as an athletic field and show that proper steps have been taken to issue the revenue bonds contemplated by said Code, 10-2A-1, et seq.?

Upon oral argument of this case in this Court, counsel for the defendants informed the Court that they did not contest plaintiff's position with reference to the third and fourth questions certified by the trial court, and for that reason they will not be dealt with extensively in this opinion, but the two questions, nevertheless, will be answered, inasmuch as they are a part of the certificate of the trial court.

The power of eminent domain is inherent in and essential to the existence of government, and such power of

the State of West Virginia in that regard is not dependent upon any constitutional provision. The only direct reference thereto in our Constitution is in Section 9 of Article III which reads as follows: "Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; Provided, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders." This provision of our Constitution, and the due process clauses of both the State and Federal Constitutions are limitations upon the authority of the sovereignty to take private property for public use. It has been well established that the State may delegate the power of eminent domain to subordinate agencies, and it is apparent that such authority has been delegated by this State to County Boards of Education. Code, 54-1-2, provides, among other purposes, for the taking of private property "(i) For public schools, public libraries, and public hospitals; * * *." Code, 18-5-8, further provides that: "The board shall purchase by condemnation, or otherwise, the lands necessary for school buildings, playgrounds, experiments in agriculture, and other educational purposes, * * *."

The State of West Virginia has likewise delegated the power of eminent domain to certain internal improvement companies, including railroads, and specifically including the defendant in this proceeding. The problem then is clearly presented by the first question certified as to whether a Board of Education, which has been delegated the power of eminent domain by the State, may exercise that authority to take for public use lands belonging to an internal improvement company which likewise has been invested with similar authority.

It is the contention of the plaintiff that the land of such internal improvement company, not essential to the exercise of its franchise, may be taken under general authority, and it concedes that land actually devoted to the exercise of such improvement company's franchise cannot be taken in the absence of special statutory authority. The defendants contend that no property whatsoever of a railroad company may be condemned by a Board of Education, and its argument in this regard is based upon legislative history upon the subject in this jurisdiction. The Acts of the Legislature of 1881, Chapter 16, Section 7, provided as follows: "Lands owned by one internal improvement company, but not necessary for the enjoyment of its franchise, may be taken for the purposes of another internal improvement company, in the same manner as land owned by others, but when such lands are claimed to be necessary to the enjoyment of such franchise, the court appointing such freeholders may, before proceeding further, determine, upon a report of such freeholders or otherwise, whether such necessity exists." This provision remained a part of the law of this State until the revision of 1931 when it was eliminated. This Court held in *B. & O. Railroad Co.* v. *The P. W. & Ky. R. R. Co.*, 17 W. Va. 812, 852, decided May 7, 1881, prior to the effective date of the above quoted statute, that: "There is nothing so sacred in the title of a railroad company to property, that it cannot be taken under the exercise of the right of eminent domain. I understand the law to be, that property belonging to a railroad company and not in actual use *necessary to the proper exercise of the franchise thereof* may be taken for the purpose of another railroad under the general railroad law of the State. An express legislative enactment is generally required in order to take such property in use by a railroad company, except where the proposed appropriation would not destroy or greatly injure the franchise of the company, or render it difficult to prosecute the object thereof. If such consequence would not follow, a general grant is sufficient.* * * * "

We cannot with certainty say whether it was the purpose of the Legislature in eliminating the Act of 1881, from the Code of 1931, to abolish the rights contained therein, or whether, recognizing the public policy established by this Court in the *B. & O. Railroad Co.* case, found that it was unnecessary to continue the statutory authority. This Court held again in *Wheeling Bridge Co.* v. *Wheeling & Belmont Bridge Co.*, 34 W. Va. 155, 11 S. E. 1009, Syl. Pt. 3, after the effective date of the 1881 Act, however, that: "One internal improvement company may, in the exercise of eminent domain, take the real estate of another internal improvement company, in the same manner and generally under the same conditions that it may take the lands owned by others, provided the lands proposed to be taken are not necessary to the enjoyment of its franchise by the defendant company; nor will any mere trivial or temporary use by the defendant company be sufficient to protect its land from such condemnation and appropriation."

We are not in agreement with the contention of counsel for defendants that the statements quoted from the opinions of the *B. & O. Railroad Co.* and the *Wheeling Bridge Co.* cases are dicta, but are of the opinion that the facts presented in those cases justified the conclusions reached, and that those cases represent the law of the State upon the subject, as well as the great weight of authority elsewhere.

In 29 C.J.S. 864, Eminent Domain, § 74, we find the statement that: "As a general rule property which is owned by a corporation whose business constitutes a public use, but which is not in actual use or essential to the exercise of the corporation's franchise, stands on the same footing as that of a private individual, and may be condemned by another corporation under the general laws. * * * " To the same effect is 18 Am. Jur. 720, Eminent Domain, § 94, that: " * * * Land not devoted to the public use, although owned by a public service corporation, may be taken under general legislative authority as freely as from a private individual; special

legislative authority is not necessary. \* \* \* " The cases cited by these text authorities are numerous, and we do not consider it necessary to do more than make reference to them.

It is not conceivable that the Legislature of this State, in conferring upon internal improvement companies the power of eminent domain, intended thereby to also confer upon such companies the authority to acquire and hold land in quantities, great or small, wholly unnecessary for the exercise of their franchise, when others, to whom such authority had likewise been delegated, might, in the course of events, require the use of some portion of such land for devotion to public use. We hold, therefore, that the Board of Education of Kanawha County may, under general statutory grant of authority, condemn land for educational purposes, belonging to a railroad company, not in use and not necessary for the exercise of its public franchise or discharge of its public duties.

The second question certified presents the problem of whether, in a condemnation proceeding in which all parties possess the right of eminent domain, it is necessary for the condemnor in its petition to allege a superior right in itself to the land sought to be taken. The form of the petition required in eminent domain is prescribed by Code, 54-2-2, and the plaintiff has closely followed the provisions thereof.

In *County Court* v. *Thornburg,* et al., 65 W. Va. 185, 63 S. E. 975, the County Court of Mason County instituted condemnation proceedings against Thornburg and others, and the sufficiency of the petition was challenged by demurrer. The Court, in Syl. Pt. 1, stated that: "A petition in writing, filed by a county court, in the circuit court, pursuant to Code, section 5, chapter 42, to condemn land for a public road, is sufficient, if it contains substantially all that is required by said section 5; \* \* \*." To the same effect is *Charleston & Southside Bridge Co.* v. *Comstock,* 36 W. Va. 263, 15 S. E. 69, Syl. Pt. 3, in which it was said that: "Chapter 42 of the Code of 1891

especially section 5, determines the form of the application, and what it must contain. This chapter, and especially this section, in what it contains and in what may fairly arise by necessary implication, is exhaustive of such formal requirements, unless otherwise expressly provided elsewhere."

The allegations of the petition are sufficient to give the court jurisdiction, and it is incumbent upon the defendants, as a matter of defense by proper pleading or otherwise, to show the facts relied upon to defeat the proceeding rather than to require the plaintiff to negative every fact and theory which the defendants may rely upon to show the property to be exempt.

In regard to question No. 3, the language of the statute clearly indicates that Chapter 104, Acts of the Legislature, 1949, (Now Chapter 10, Article 2A, Code, as amended) does not contain the exclusive procedure to be followed by County Boards of Education in condemning land for athletic fields. Code, 10-2A-24, provides: "The authority herein given shall be in addition to and not in derogation of any power existing in any county board of education under any constitutional, statutory or other provisions of the law which it now may have or may hereafter acquire." Section 25 of Article 2A is to the same effect, and emphatic upon the point: "This article shall, without reference to any other statute, be deemed full authority for the construction, acquisition, improvement, equipment, maintenance, operation and repair of the athletic establishment herein provided for, and for the issuance and sale of bonds by this article authorized, and shall be construed as an additional alternative method therefor, * * *." Code, 54-1-11, also contains the following general provision in regard thereto: "The power of eminent domain conferred on any incorporated company or body politic by sections one and two of this article shall not be deemed or construed to be limited or restricted in any manner by the enumeration by any other provision of this Code of any specific purpose for which such power may be exercised."

As to the fourth question, we subscribe to the rule found in 47 Am. Jur. 341, Schools, § 64: " * * * And there can be no question that land taken by right of eminent domain for the purpose of common schools is taken for the public use. The amount of land which may be taken is not limited to that needed for the schoolhouse itself, but may include such additional amount as is necessary for its reasonable use as such, and land taken for a playground in conjunction with a school may be as essential as land for the schoolhouse itself. The acquisition of additional land for recreation purposes under the power of eminent domain has been held authorized by a statute authorizing the board of education to buy or lease sites for schoolhouses with necessary grounds.", and, " * * * It has been held unnecessary that the land purchased be connected with and contiguous to the schoolhouse site." 47 Am. Jur. 352, Schools, § 75.

Although Article 2A of Chapter 10 provides in more detail for the establishment of athletic facilities, and also for a system of financing such establishments by self-liquidating revenue bonds, this Court holds that under the provisions of Code, 18-5-8, as hereinabove quoted, sufficient authority is conferred upon the Kanawha County Board of Education to take the land of the defendants for the establishment of a playground or athletic field if it otherwise has the authority upon the facts, as they are developed, to take the land for any purpose.

We answer the first and second questions certified in the affirmative and the third and fourth questions in the negative.

The ruling of the Circuit Court of Kanawha County, wherein the demurrer to the petition of the plaintiff was sustained, is reversed and this case is remanded to the Circuit Court of Kanawha County for further proceedings, not inconsistent with the views expressed in this opinion.

*Reversed and*
*remanded.*