512 S.E.2d 576

The **POTOMAC EDISON COMPANY**, Petitioner below, Appellee,

v.

The **JEFFERSON COUNTY PLANNING AND ZONING COMMISSION**, Paul Raco, Richard H. Flaherty, Paul W. Griger, Lyle Campbell Tabb, III, Scott Coyle, Samuel J. Donley, Jr., Rosella Kern, Peter H. Morgens, Ernest Benner, Al Hooper, Dean Hockensmith, and Arnold Daily, Respondents below, Appellants.

No. 24994.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 27, 1998.

Decided Dec. 11, 1998.

Susan R. Snowden, Esq., Clarence E. Martin, III, Esq., Joseph L. Caltrider, Esq., Martin & Seibert, L.C., Martinsburg, West Virginia, Attorneys for the Appellee.

Michael D. Thompson, Esq., Prosecuting Attorney, J. Michael Cassell, Esq., Assistant Prosecuting Attorney, Charles Town, West Virginia, Attorneys for the Appellant, The Jefferson County Planning and Zoning Commission.

STARCHER, Justice:

In this case of first impression we are asked to address a conflict between the exercise of the State's police power by a county planning commission through zoning and planning regulations, and the exercise of the statutory power of condemnation by a utility company. The utility company asserts that it is exempt from such land use regulations on property that a circuit court has allowed the utility to take pursuant to its statutory condemnation powers.

The utility company in this case petitioned the circuit court for a declaratory judgment and a writ of mandamus to compel a county planning commission to issue a notice stating the utility was in compliance with local zoning and planning regulations. The trial court issued the writ of mandamus, and declared that the public utility was not subject to local land use regulations.

On an appeal by the county planning commission, we hold that the circuit court erred in granting the writ of mandamus and declaratory judgment. As set forth below, we hold that privately-owned public utility companies are bound to comply with local zoning and planning regulations. Although a public utility may exercise the power of eminent domain, a public utility is not a quasi-state agency exempt from local government regulation. Additionally, because the public utility in this case has circumvented rather than attempted to avail itself of the zoning and planning regulations in question, the public

utility has failed to show a legal duty on the part of the county planning commission to do the thing which the public utility seeks to compel. We therefore reverse the circuit court.

## I.

### Facts and Background

■ This case involves 10.05 acres of land in the Middleway District in Jefferson County, West Virginia. The land has been zoned as a "rural agricultural district" by the respondent below and appellant, The Jefferson County Planning Commission ("Planning Commission"). The Planning Commission is a political subdivision of the Jefferson County Commission, and is empowered to enforce land use regulations[1] regarding real property located in Jefferson County.

Properties adjacent to and near the land in question have recently experienced substantial commercial and industrial expansion. The petitioner below and appellee, Potomac Edison Company, is a private corporation that provides electrical service in Jefferson County and in other counties in this State. Over the past 10 years, the industrial and commercial expansion of the Jefferson County area has caused the demand for electricity in the county to grow at a rate of approximately 8% per year.

To address this increasing demand for electricity, in 1992 Potomac Edison began planning for the construction, of additional high-power transmission lines into the area, and for the construction of a power substation to reduce the power to a level that is usable by consumers.

In July 1994, representatives from the utility company met with members of the Plan-

ning Commission concerning the construction of a power substation in the county's Middleway District. At that meeting, the Planning Commission pointed out the land in question was zoned for rural agricultural use, and that the proposed electric substation was not a permitted use under County land use ordinances. However, the Planning Commission also outlined for Potomac Edison the process whereby the utility could request a variance or conditional use permit for the proposed electric substation.

By a letter dated August 24, 1994, a representative of Potomac Edison informed the Planning Commission of the need for the substation to support continued economic development. Potomac Edison argued that either (1) the county's land use ordinances did not apply to the construction of a power substation, or (2) that the ordinances should be amended to "clarify" that they did not apply. The Planning Commission denied Potomac Edison's request for an exemption from the ordinances, and again informed the power company of the process for seeking a variance or a conditional use permit.

Two years later, on October 9, 1996, Potomac Edison filed a condemnation petition in the Circuit Court of Jefferson County seeking to condemn and take by eminent domain the 10.05 acre parcel in question.[2] The Planning Commission was not a party to, received no notice of, and did not participate in this litigation. The circuit court entered an order in the condemnation action on November 19, 1996 granting title to the 10.05 acres of land to Potomac Edison.[3]

On January 15, 1997, Potomac Edison filed with the Planning Commission an application for a National Pollutant Discharge Elimina-

---

1. By the term "land use regulations" we mean both zoning and planning regulations. " 'Zoning' is concerned with whether a particular area of a community may be used for a particular purpose, while 'planning' involves how that use is undertaken." Syllabus Point 1, *Kaufman v. Planning & Zoning Comm'n of City of Fairmont*, 171 W.Va. 174, 298 S.E.2d 148 (1982).

The Planning Commission asserts that three land use ordinances are at issue in this case: the Improvement Location Permit Ordinance; the Subdivision Ordinance; and the Development Review and Zoning Ordinance.

2. The land then belonged to the Murall Limited Partnership. *The Potomac Edison Co. v. Murall Limited Partnership, et al.*, Circuit Court of Jefferson Co., Civil Action No. 96–P–62.

3. The condemnation of this parcel created a subdivision of a larger parcel. This subdivision triggered the Planning Commission's jurisdiction to regulate the construction of improvements, use and subdivision of the property.

tion System ("NPDES") permit for storm water management on the land in question.[4] The Planning Commission informed Potomac Edison that as part of the NPDES permit application process, Potomac Edison would have to apply for a variance or conditional use permit under the County's land use ordinances. Potomac Edison was told that State regulations require that before an NPDES permit could be granted, Potomac Edison would have to submit a "certificate of compliance" showing that Potomac Edison had obtained the necessary local zoning permits from the Planning Commission.

The Planning Commission refused to issue a certificate of compliance. On April 23, 1997, Potomac Edison filed a petition for a writ of mandamus and a petition for a declaratory judgment against the Planning Commission and its members in the Circuit Court of Jefferson County. The utility contended that the Planning Commission had a non-discretionary duty to issue the certificate of compliance for the NPDES permit, and that a writ of mandamus was necessary to compel the Planning Commission to issue the certificate of compliance showing approval for the construction of the power substation. Furthermore, Potomac Edison sought a declaratory judgment from the circuit court to the effect that the statutes giving utilities the power to condemn land "supersede the zoning powers and other land use regulations conferred upon County government."

After receiving stipulations and briefs from the parties, the circuit court entered a final order on August 8, 1997, granting Potomac Edison the desired declaratory judgment. The circuit court's order declares that "a post-condemnation application of a pre-existing land-use ordinance would preclude and frustrate the meaning and purpose of the condemnation statutes of the State of West Virginia." The circuit court concluded that, "in ordering a condemnation, [a circuit court] must make an initial finding of public neces-

sity [for a private utility] to utilize the power of condemnation and to further subject the property to application of land use ordinances would frustrate the statutorily-conferred power...."

Furthermore, the circuit court's order granted Potomac Edison's writ of mandamus. The court ordered the Planning Commission to "forthwith issue a Certificate of Compliance to the Department of Environmental Protection allowing the issuance of the NPDES permit to ... The Potomac Edison Company, for the establishment of its electrical substation on the property condemned...."

It is from this order that the Planning Commission now appeals.

## II.

### *Standard of Review*

We review a circuit court's entry of a declaratory judgment *de novo.* Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). Similarly, we review *de novo* an order granting relief through the extraordinary writ of mandamus. Syllabus Point 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995).

With these standards in mind, we examine the circuit court's August 8, 1997 order entering a declaratory judgment and granting a writ of mandamus.

## III.

### *Discussion*

#### A.

### *The Circuit Court's Declaratory Judgment Order*

This case presents a conflict between two powers that are assigned by the Legislature through statutes: the power of local governments to enact and enforce zoning and

---

**4.** The National Pollutant Discharge Elimination System ("NPDES") is a part of the federal Clean Water Act, 33 U.S.C. § 1251, *et seq .,* and is normally administered by the West Virginia Division of Environmental Protection. However, on March 15, 1993, the Division of Environmental Protection reached a "memorandum of under-

standing" with the Planning Commission allowing the Planning Commission to act as an agent for the State in the storm water permitting process. This procedure allows the Planning Commission to coordinate the NPDES process with its own zoning requirements.

planning regulations, and the power of privately-owned public utilities to acquire land by eminent domain for public uses.

Local governments such as the Jefferson County Commission are empowered by the Legislature to create planning commissions and to enact and enforce land use regulations pursuant to *W.Va.Code*, 8–24–1 to –78. Specifically, *W.Va.Code*, 8–24–39 [1988] allows local governments to enact planning regulations:

> ... so that adequate light, air, convenience of access, and safety from fire, flood and other danger may be secured; that congestion in the public streets may be lessened or avoided; that the public health, safety, comfort, morals, convenience and general public welfare may be promoted; [and] that the preservation of historic landmarks, sites, districts and buildings be promoted[.]

The Legislature has statutorily conferred upon certain private corporations the power to take private property through eminent domain in *W.Va.Code*, 54–1–1 to –12. This article specifically allows privately-owned power companies to take or damage private property for specified public uses, including:

> For the construction and maintenance of ... electric light, heat and power plants, systems, lines, transmission lines, conduits, stations (including branch, spur and service lines), when for public use[.]

*W.Va.Code*, 54–1–2(b) [1979].

The circuit court ruled that the power of public utilities to take property through eminent domain is superior to the authority of local governments to enforce land use regulations, because to hold otherwise would "preclude and frustrate the meaning and purpose" of the statutorily-conferred power of eminent domain.

Potomac Edison argues that the circuit court's decision is correct because the statutes conferring upon local governments the power to enact land use regulations specifically exempt State agencies from those regulations. *W.Va.Code*, 8–24–69 states:

> The planning and zoning provisions of this article are supplemental to and do not abrogate the powers and authority extended to agencies, bureaus, departments, commissions, divisions and officials of the state government by other state statute and these powers and authority shall remain in full force and effect....

Potomac Edison argues that this statute applies to Potomac Edison because it is a quasi-state agency. In support of this position, Potomac Edison cites to two cases. First, it refers to *Handley v. Cook*, 162 W.Va. 629, 632, 252 S.E.2d 147, 149 (1979), where we stated that "The Legislature in order to make power available has conferred upon electric power companies the right of eminent domain, and has thereby necessarily imposed upon them, as public service corporations, the right and duty of performing public service." Second, in *Baldwin v. Appalachian Power Co.*, 556 F.2d 241 (4th Cir. 1977) (*per curiam*), the appellee points out that the defendant power company was, "[b]y exercising the delegated power of eminent domain ... act[ing] as an agent of the state." By availing itself of a "state-granted right of entry" the *Baldwin* court held that the power company was acting "under color of state law" for purposes of 42 U.S.C. § 1983.

Potomac Edison, in sum, argues that the Legislature has directed that public utilities, when exercising the power of eminent domain, are in essence state agencies and therefore exempt from the Planning Commission's authority.

The appellant Planning Commission's argument is that county land use ordinances are on the same level as State law, unless they conflict with or are preempted by State law. The Planning Commission argues that Potomac Edison is a private corporation, and not an arm of the government or a political subdivision. The appellant agrees that while *W.Va.Code*, 54–1–1 to –12 confers upon public utility companies the power of eminent domain, those statutes do not exempt those companies from local land use ordinances. We agree with the Planning Commission's position.

It is well established that through *W.Va. Code*, 54–1–1 to –12, the Legislature has seen fit to statutorily delegate the power of eminent domain to certain "internal improve-

ment companies" such as Potomac Edison. *Board of Education of Kanawha Co. v. Campbells Creek R. Co.*, 138 W.Va. 473, 476, 76 S.E.2d 271, 274 (1953). We have explicitly recognized that there is a substantial difference between the degree of deference that is to be given to "private entities such as utilities" and public governmental bodies, in their exercise of the power of eminent domain. *Charleston Urban Renewal Authority v. The Courtland Co.*, 203 W.Va. 528, 537 n. 6, 509 S.E.2d 569, 578 n. 6 (1998).

For example, in *West Virginia Board of Regents v. Fairmont, Morgantown & Pittsburgh Railroad Co.*, 155 W.Va. 863, 189 S.E.2d 40 (1972), a governmental subdivision, the West Virginia Board of Regents, sought to condemn land and easements owned by a privately-owned railroad to which the State had granted the power of eminent domain. We recognized the Board of Regents' authority to take land from the privately-owned railroad by eminent domain for the construction of a personal rapid transit system, where the land was to be dedicated to public use by West Virginia University. We held that the eminent domain rights of the private corporation were subordinate to the rights of the government subdivision, stating:

> The right of the state to condemn is an attribute of sovereignty, while the power of utilities to condemn is granted by legislative act and may be revoked by legislative act. The right of the state is therefore superior to that of the utility.

155 W.Va. at 867, 189 S.E.2d at 43.

Furthermore, there is no statutory language excluding private corporations exercising eminent domain from the application of land use ordinances. (For example, *W.Va. Code*, 8–24–50 [1984] exempts timber and mineral extraction from the application of certain zoning ordinances.)

We therefore reject the notion, absent specific statutory authorization, that the taking of land by eminent domain for public use raises a private corporation to the level of being a state agency for purposes of avoiding the ambit of laws regulating land use.

Numerous other jurisdictions have concluded that privately-owned power utilities should be subject to local zoning restrictions. While statutory schemes vary from state-to-state, in the absence of a specific statutory exemption, courts generally hold that local zoning ordinances are binding upon a public utility. *See, e.g., Commonwealth Edison Co. v. County of Lake*, 183 Ill.App.3d 1060, 132 Ill.Dec. 590, 540 N.E.2d 6 (1989) (public utility attempted to subdivide parcel of land on which a transmission distribution center was built; court held statute exempting "poles, towers, wires, cables, conduits" from zoning restrictions did not exempt public utility from county zoning ordinance concerning the subdivision of property); *Union Agricultural Society at Palmyra, Inc. v. Sheldon*, 79 Misc.2d 818, 361 N.Y.S.2d 598 (1974) (although agricultural society possessed power of condemnation, its construction of an exhibit and storage building could be restricted by local zoning ordinances); *Porter v. Southwestern Public Service Co.*, 489 S.W.2d 361 (Tex.Civ.App.1972) (landowners sued public utility to force compliance with zoning ordinance in construction of power substation; court held that public utility must comply with zoning restrictions because "[t]he city, to which the state has specifically entrusted the police powers, has the power to inquire into the reasonableness of the manner by which eminent domain is to be exercised within its corporate limits."); *State ex rel. Kearns v. Ohio Power Co.*, 163 Ohio St. 451, 127 N.E.2d 394 (1955) (power company attempted to build power lines on property taken by eminent domain in territory controlled by planning commission; court held that the privately-owned power company was amenable to the planning commission's zoning restrictions); *New York State Electric & Gas Corp. v. Statler*, 204 Misc. 7, 122 N.Y.S.2d 190, 191 (1953) (a public utility "has the right, where it establishes the necessity therefor, and complies with the local ordinances, to condemn property but these rights do not exempt it from complying with the local zoning ordinances." Local zoning ordinances were binding on the public utility.) *See generally,* A. Manley, "Applicability of Zoning Regulations to Projects of Nongovernmental Public Utility as Affected by Utility's Having Power of Eminent Domain," 87 A.L.R.3d 1265 (1978).

After reviewing the circuit court's August 8, 1997 final order, we conclude that the court erred by declaring that the Planning Commission could not enforce the Jefferson County zoning ordinances against Potomac Edison. We hold that a privately-owned public utility, which may exercise the power of eminent domain under *W.Va .Code*, 54–1–1 to –12, is subject to land use regulations enacted by a local unit of government pursuant to *W.Va.Code*, 8–24–1 to –78.

### B.

### *The Circuit Court's Writ of Mandamus*

■ Mandamus will lie to compel performance of a nondiscretionary duty of an administrative officer though another remedy exists, where it appears that the official, under misapprehension of law, refuses to recognize the nature and scope of his duty and proceeds on the belief that he has discretion to do or not to do the thing demanded of him.

Syllabus Point 4, *Walter v. Ritchie*, 156 W.Va. 98, 191 S.E.2d 275 (1972).

■ Before the West Virginia Division of Environmental Protection ("DEP") will issue an NPDES permit to regulate storm water discharged from construction sites, the DEP requires the developer of the land to supply proof of compliance with applicable local zoning and planning requirements. The NPDES permit application instructions themselves state that the failure to supply such proof "may delay the permit or cause it to be denied."[5] In this case Potomac Edison is seeking to compel the Planning Commission to issue a statement to the effect that Potomac Edison is in compliance with local zoning ordinances, so that Potomac Edison may receive an NPDES permit for the development of the 10.05 acre plot of land and the construction of a power substation.

The appellee argues that the Planning Commission has no authority to "usurp" or "contradict," through the application of zoning regulations, a valid condemnation order issued by a circuit court pursuant to *W.Va. Code*, 54–1–1 to –12. Potomac Edison contends that the Planning Commission has a nondiscretionary duty to comply with a valid condemnation order—and in this case, that duty includes a duty to issue all necessary permits showing Potomac Edison is in compliance with Jefferson County zoning ordinances, so that Potomac Edison may receive an NPDES permit and develop the property taken by eminent domain. Potomac Edison therefore argues that the Planning Commission acted under a "misapprehension" of the law of eminent domain, and mandamus is warranted to compel the Planning Commission to issue the permits necessary to the construction of a power substation.

After reviewing the record in this case, we are unable to agree that the Planning Commission had a duty to issue a notice that Potomac Edison is in compliance with the Jefferson County land use regulations, because Potomac Edison entirely failed to submit to the zoning process.

The record in this case reveals that in the years preceding and subsequent to the condemnation of the disputed 10.05 acres, appellee Potomac Edison was aware that the construction of a power substation was not within the Planning Commission's zoning and planning regulations and guidelines. The appellee was advised of the procedure for seeking a variance or conditional use. However, Potomac Edison circumvented that process by filing a petition in the circuit court for a writ of mandamus.

We see nothing in the record before us that indicates that the Planning Commission has attempted to absolutely and finally prevent Potomac Edison from constructing its

---

5. The DEP has promulgated "Instructions to Complete A Site Registration Application Form For the General WV/NPDES Permit For Storm Water Associated With Industrial (Construction) Activity In West Virginia" which states, in part:

11. Certification of Compliance with Applicable Local Laws—Several counties and municipalities in the state have subdivision laws or regulations which must be followed in order to be in compliance with this general permit. The application for this permit does not absolve the developer from his or her duty to obtain the proper permits required by any local or other state jurisdiction. Certification of Compliance must be attached to this application. This can be in the form of a copy of the local permit ... Failure to comply with this may delay the permit or cause it to be denied.

power substation. Because Potomac Edison refused to act in accordance with the land use regulations and procedures, or seek a variance or conditional use permit under the regulations, and has not shown why it is with all diligence unable to comply with the current restrictions, it cannot be said that Potomac Edison is unfairly impacted by the Jefferson County land use regulations.

■ We note Potomac Edison's concerns that the zealous application of zoning and planning regulations could, theoretically, unreasonably interfere with a public utility's operations. Because electric power is necessary for the public health, safety and welfare, and because electricity is often distributed by an electric utility to a large region crossing many local government jurisdictions, it seems clear that local planning and zoning agencies should apply land use restrictions with great restraint. We are in agreement with those legal commentators who suggest that public utilities should enjoy a "favored" status. While a public utility must submit to local land use regulations, local zoning and planning agencies must take a balanced approach to the regulation of utilities. Local governments may, in the public interest, provide reasonable parameters for land use; but local governments cannot effectively prohibit a utility from conducting its necessary activities, and thereby "dump" the construction of utility facilities on other jurisdictions. *See,* S. Williams, *Limiting Local Zoning Regulation of Electric Utilities: A Balanced Approach in the Public Interest,* 23 U.Balt.L.Rev. 565 (1995), and cases and treatises cited therein.

After carefully reviewing the record, we cannot say that the Planning Commission had a nondiscretionary duty to find that Potomac Edison was in compliance with Jefferson County planning and zoning ordinances. Accordingly, the circuit court erred in issuing the writ of mandamus, and the order must be reversed.

## IV.

### *Conclusion*

For the foregoing reasons, the August 8, 1997 order of the Circuit Court of Jefferson County is reversed.

Reversed.

Chief Justice DAVIS and Justices WORKMAN and McCUSKEY joined in the Opinion of the Court.

Justice MAYNARD dissents.

Justice McGRAW did not participate in the decision of this case.